OPINION
{¶ 1} Appellant, Stanley T. Adams, appeals from a judgment of the Trumbull County Court of Common Pleas, denying his petition for postconviction relief. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On the night of October 11, 1999, appellant was partying with a group of friends at Packard House Apartments, in Warren, Ohio. They were doing crack cocaine. During the course of the evening, appellant ran out of crack and money. At about 11:15 p.m., appellant left the gathering alone to get more money for crack. At that time, appellant was wearing a t-shirt, blue jeans, and tennis shoes.
 {¶ 3} Appellant returned to the party about sixty to ninety minutes later, without a shirt and with blood on his clothing and hands. He paid for more crack with a bloody twenty dollar bill. At that time, appellant attributed the blood to a paper cut.
 {¶ 4} Thereafter, appellant, Derwin, and Mallory traveled in appellant's borrowed car to Warren's west side because Derwin wanted to pick up more crack for the party.[1] Appellant dropped Derwin off at a drug house and circled the block. While Derwin was circling, appellant was stopped by Warren Police Sergeant Robert Massucci ("Sergeant Massucci") because the car he was driving only had one headlight. Appellant stepped out of the car shirtless. Additional officers reported to assist Sergeant Massucci. Patrolman Jeffrey Miller ("Patrolman Miller") frisked appellant for weapons, drugs, and contraband. He noticed appellant's pants were wet with blood. Appellant again attributed the blood to a paper cut on his hand, but the officers could find no laceration. Patrolman Miller testified that appellant looked as if he had been dressing a deer. Sergeant Massucci and Patrolman Miller both noticed that there were tool boxes and tools behind the driver's seat. The officers sent appellant on his way. Appellant, Derwin, and Jackson returned to the party.
 {¶ 5} At approximately 12:00 p.m. on October 12, 1999, Donna drove to her friend E.C.'s ("the mother") home on Dickey Avenue in Warren, Ohio. Donna and the mother had three grandchildren in common, and Donna was hoping the mother could baby-sit one. As Donna walked through the mother's unlocked front door, she saw the mother lying at the foot of the stairs. She touched her leg and noticed it was cold. Donna then left, called 911, and reported a possible homicide.
 {¶ 6} Warren Police arrived at the home. Officer Jeffrey Cole ("Officer Cole") stepped over the mother's body and ascended the staircase, noticing blood on the stairway. Officer Cole entered a ransacked bedroom on the second floor, and he testified that the mattress on the bed was askew, a dresser was overturned, and clothes were scattered about the room. Officer Cole peered over the mattress and found the naked body of the mother's twelve-year-old daughter, A.C. ("the daughter"). Officer Cole testified that the daughter had an extension cord wrapped around her neck with the plug in her hand. A bracelet had been placed on her abdomen and two stud earrings were positioned near her vagina. Officer Cole believed the daughter had been posed by her killer. There was also blood in the bathroom, indicating that the killer washed his hands after the murders.
 {¶ 7} The next day, on October 12, 1999, appellant sold some of his tools for $100 to a neighbor who lived in his apartment complex. The neighbor's wife had loaned appellant their car on October 11, 1999. According to the neighbors, the car had one burned out headlight.
 {¶ 8} Appellant became a suspect almost immediately. The Warren Police Department learned that appellant used to live with the victims, as he was dating the daughter's older sister and had lived with her for a few years. The neighbors permitted the Warren Police to tow their vehicle. The Ohio Bureau of Criminal Identification ("BCI") discovered blood on the steering wheel, headlight switch, and one foot pedal. In the back seat, officers located a McDonald's bag and some French fries.
 {¶ 9} On October 14, 1999, appellant was briefly questioned by Detectives Emanual Nites ("Detective Nites") and Jeffrey Hoolihan ("Detective Hoolihan") and Sergeant Al Bansky ("Sergeant Bansky"), all of the Warren Police Department. The interview began at 9:50 a.m. The officers began the interview by asking, "[o]k, Stanley have you been advised that you are not under arrest?" Appellant responded, "[y]es sir." The officers then asked appellant, "[h]ave you been advised as to that you are free to leave at any time?" Appellant again responded, "[y]es sir." Later in the interview, the officers repeated to appellant that he was not under arrest and was free to leave at any time. The officers did not tell appellant about what specifically he was being questioned. Appellant stated that he assumed he was being questioned about a double homicide because it was all over the news.
 {¶ 10} The officers explained to appellant that they readMiranda rights to anyone they interview, regardless of whether the person is under arrest. Thereafter, Detective Nites read appellant his Miranda rights, but appellant refused to initial and confirm that he was read his rights. Appellant stated that he wanted an attorney present before talking, and reiterated this a few minutes later in the interview. Appellant was never asked any question relating to any crime, and appellant did not provide any information relating to any crime. The interview lasted a total of eight minutes and indicates that appellant exercised his right to leave the police station.
 {¶ 11} Six days later, on October 20, 1999, appellant was arrested for offenses unrelated to the murders of the mother and daughter. After spending some time in a holding cell, appellant was questioned for a few hours by Detectives Nites and Hoolihan about the murders. Appellant was read his Miranda rights and signed a waiver. At no time did appellant request an attorney or request that questioning be stopped. The interview was partially audiotaped and partially videotaped, but neither the audiotape nor the videotape was made part of the record in this matter.
 {¶ 12} At first, appellant denied any involvement with or knowledge of the crimes. He discussed how he worked on cars and often bought tools at a pawn shop. Then, appellant changed his story.
 {¶ 13} Appellant admitted to being in the victims' house on the night of the murders. According to appellant, he stopped by the house, walked in the unlooked front door, and immediately tripped over the mother's body. Appellant stated that the mother was "staring" up at him and that her body was cold and covered with blood. Appellant stated that, as a result of the fall, he got blood on his shoes, pants, and hand.
 {¶ 14} After tripping over the mother's body, appellant stated that he began to yell for the daughter and went upstairs to look for her. When he saw the daughter's body on a mattress in the mother's bedroom, he stopped at the door of that room. Appellant stated he never went into the mother's bedroom or touched the daughter. According to appellant, the daughter's head was purple, she was naked, and she was holding something in her hand. Appellant ran out of the house and never reported the possible homicides. Appellant admitted that, the next day, he burned his blue jeans and shoes in a pit in his back yard because he was afraid that, due to the blood and his past criminal history, he would be charged with a double homicide. Appellant stated that his t-shirt was in his apartment on the sofa or in the clothes basket.[2]
 {¶ 15} On November 16, 2002, the Trumbull County Grand Jury indicted appellant on eight counts in connection with the deaths of the mother and daughter. In Counts 1 and 2, appellant was indicted for the aggravated murder of the daughter, with seven specifications of aggravating circumstances, in violation of R.C. 2903.01(B), 2929.04(C), and 2941.14(C). In Count 3, appellant was indicted for the aggravated murder of the mother, with three specifications for aggravating circumstances, in violation of R.C. 2903.01(B) and 2941.14(C). Count 4 was for aggravated burglary in violation of R.C. 2905.01(A)(2) and/or (3), while Count 5 was for kidnapping, in violation of R.C. 2905.01(A)(2). Counts 6, 7, and 8 charged appellant with the vaginal, anal, and oral rape of the daughter, in violation of R.C. 2907.01(A)(1)(b).
 {¶ 16} Appellant was appointed two defense counsel. He was arraigned on November 20, 2000, and he entered pleas of not guilty to all charges.
 {¶ 17} A jury was empanelled and sworn on September 11, 2001. Trial began on September 12, 2001, and ended on October 3, 2001. We will review some of the vast testimony provided.
 {¶ 18} Detective Hoolihan provided very detailed testimony about his investigation of the murders. Detective Hoolihan stated that a McDonald's bag, French fries, and many tools were in the back seat of the neighbors' car. Detective Hoolihan learned that appellant and the daughter's older sister lived together for a few years, that appellant at one time lived with the victims on Dickey Avenue, and that appellant worked on cars. Detective Hoolihan stated that the mother's body was found face down; he added that there was a "tool impression on [the mother's] face that was significant in style, type, what it looked like * * *." Detective Hoolihan also testified that appellant "voluntarily came down to the Warren Police Station" for questioning on October 14, 1999.
 {¶ 19} Dr. Humphrey Germaniuk ("Germaniuk") autopsied both bodies and testified to his findings. He classified the murders of both the mother and daughter as homicides. The cause of the mother's death was multiple blunt force trauma and multiple sharp force traumatic injuries. The mother had a broken nose; broken ribs; compression to the neck; and seven perforations to the head, neck, chest, and abdomen with an unidentified object. Germaniuk testified this object may have been a bersa bar.
 {¶ 20} Germaniuk testified that the daughter's cause of death was strangulation associated with blunt force trauma to the head. Germaniuk documented many injuries to the daughter including bruises about the genitalia, multiple contusions to the head, lacerations on the mouth and lips consistent with being punched in the mouth, brain swelling, and strangulation with a the cord which was wrapped five times around her neck. Germaniuk also discovered French fries in the daughter's stomach. Germaniuk administered rape kits to both victims and accordingly took oral, vaginal, and rectal swabs from both victims.
 {¶ 21} DNA evidence linked appellant to the crimes.
 {¶ 22} During trial, appellant's trial counsel admitted his October 20, 1999 interview.[3] Appellant's counsel had decided not to file any pre-trial motion to suppress these statements pursuant to Miranda v. Arizona (1966), 384 U.S. 436, and its progeny. As demonstrated by their affidavits accompanying appellant's appellate brief to this court, appellant's trial counsel decided, as a strategic matter, to admit the recorded statements of appellant taken on that day. Appellant's trial counsel believed this would be beneficial to the defense, as the jury could hear appellant's explanation of the events without him testifying, becoming subject to cross-examination, and being impeached with his prior criminal record.
 {¶ 23} Ultimately, appellant's October 20, 1999 statement was used by the state to impeach his credibility. During that interview, appellant admitted being at the victims' residence on the night of the murders but denied any responsibility or knowledge about the crimes. Appellant also, importantly, stated that the mother's body was face up and "staring" at him. Detective Hoolihan testified that the mother's body was face down.
 {¶ 24} On September 26, the jury found appellant guilty of the aggravated murder of both the mother and daughter, kidnapping, aggravated burglary, oral and vaginal rape of the daughter, and the related specifications. Appellant was acquitted of anal rape of the daughter and the related capital specifications under R.C. 2929.04(A)(7).
 {¶ 25} On October 3, 2001, the jury recommended a death sentence on Counts 1 and 3, the murders of the mother and daughter. On October 10, 2001, the trial court followed that recommendation and sentenced appellant to death on these counts. The court also sentenced appellant to ten years imprisonment on Counts 4 and 5 and life imprisonment on Counts 6 and 8. The trial court imposed consecutive sentences on Counts 4 through 6 and Count 8. The sentence was memorialized in an October 10, 2001 judgment entry.
 {¶ 26} From this judgment, appellant filed a timely notice of appeal with the Supreme Court of Ohio on November 21, 2001. Among others, appellant raised the following proposition of law to that Court: "Failure of trial counsel to file a non-spurious motion to suppress evidence constitutes a denial of effective assistance of counsel under U.S. Const., Amend. VI and XIV and under Ohio Const., Art. I, Sec. 10." In the body of his brief to that Court, and in reference to this proposition of law, appellant specifically argued that his trial counsel were ineffective for failing to move to suppress his October 20, 1999 statement to the Warren Police Department because the detectives purportedly violated appellant's Miranda rights. In total, appellant raised five propositions of law alleging ineffective assistance of counsel.
 {¶ 27} On January 6, 2003, appellant filed a petition with the trial court to vacate his convictions and sentences pursuant to R.C. 2953.21. In summary, appellant argued that the officers violated his Edwards rights by reinitiating questioning with him on October 20, 1999; that his Miranda waiver on October 20, 1999 was not voluntary, knowing, and intelligent because he suffered an epileptic seizure in a holding cell just before being questioned; that he was denied his right to confer with counsel during the trial of the matter; and that his trial counsel were ineffective for failing to file motions to suppress his October 20, 1999 statement. Appellant also sought leave to conduct discovery to obtain further information to support his claims.
 {¶ 28} Appellee moved to dismiss the petition on February 18, 2003, and appellant responded. The trial court denied the petition without a hearing on March 26, 2003. In the judgment entry, the trial court stated, "* * * this Court has reviewed the * * * materials so as to determine whether there are substantive grounds for relief warranting a hearing on the Petitioner's Petition. Based upon this review, the Court finds Petitioner has failed to show substantive grounds for relief as to the five causes of action set forth in his Petition, and the Petition is, therefore, subject to dismissal without a hearing."
 {¶ 29} The court then detailed its findings of fact and conclusions of law. Within its findings, the trial court noted and reiterated the propositions of law that appellant raised in his direct appeal. The trial court concluded that appellant failed to substantiate his right to counsel claim sufficient to warrant a hearing on the matter and that appellant's remaining claims were barred by res judicata. The trial court also determined that, because appellant had not articulated substantive grounds for relief, he was not entitled to leave to conduct further discovery to support his claims.
 {¶ 30} Appellant timely appealed that judgment to this reviewing court and sets forth the following assignments of error:
 {¶ 31} "[1.] The trial court erred in denying the petition without conducting an evidentiary hearing when appellant supplied sufficient evidentiary material corroborative of the allegations in his petition.
 {¶ 32} "[2.] The trial court erred in denying the petition without conducting an evidentiary hearing on the claim of a violation of appellant's Miranda and Edwards rights.
 {¶ 33} "[3.] The trial court erred when it denied appellant an evidentiary hearing on his claim that he was denied meaningful access to counsel.
 {¶ 34} "[4.] The trial court erred in denying the petition without conducting an evidentiary hearing on appellant's claim that he was under a disability caused by epilepsy."
 {¶ 35} The postconviction relief process is a civil attack on a criminal judgment, not an appeal from the judgment. State v.Steffen (1994), 70 Ohio St.3d 399, 410. "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the [trial record]." State v. Murphy (Dec. 26, 2000), 10th Dist. No. 00AP-233, 2000 Ohio App. LEXIS 6129, at 5. A postconviction relief petition does not afford a petitioner a second opportunity to litigate his or her conviction. State v.Hessler, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, at ¶ 23.
 {¶ 36} A defendant seeking to challenge a conviction or sentence through a petition for postconviction relief under R.C. 2953.21 is not automatically entitled to a hearing. State v.Calhoun (1999), 86 Ohio St.3d 279, 281; State v. Jackson
(1980), 64 Ohio St.2d 107. To warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the burden of providing evidence demonstrating a cognizable claim of constitutional error. R.C. 2953.21(C); Hessler at ¶ 33. The court has the duty to ensure a defendant presents evidence sufficient to warrant a hearing, and the evidence must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *." R.C. 2953.21(A)(1); Calhoun at 282-283. Pursuant to R.C. 2953.21(C), a defendant's petition may be denied without a hearing when the petition, supporting affidavits, documentary evidence, files, and records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. Calhoun at 281.
 {¶ 37} An appellate court reviews the denial of a motion for postconviction relief for an abuse of discretion. Calhoun
at 281. Further, "in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended. If we would allow any open-ended allegation or conclusory statement concerning competency of counsel without a further showing of prejudice to the defendant to automatically mandate a hearing, division (D) of 2953.21 would be effectively negated and useless." (Citations omitted.) Calhoun at 284.
 {¶ 38} A trial court may also dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. State v. Szefcyk (1996), 77 Ohio St.3d 93, syllabus. According to Szefcyk, res judicata is applicable to all postconviction proceedings. Id. at 95. Under the doctrine, a defendant who was represented by counsel is barred from raising an issue in a petition for postconviction relief if the defendant raised or could have raised the issue at trial or on direct appeal. Szefcyk at syllabus; State v. Reynolds (1997),79 Ohio St.3d 158, 161.
 {¶ 39} For a defendant to avoid dismissal of the petition by res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court's record, and it must not be evidence that existed or was available for use at the time of trial. State v. Cole
(1982), 2 Ohio St.3d 112, syllabus; State v. Lawson (1995),103 Ohio App.3d 307, 315. "To overcome the res judicata bar, evidence offered dehors the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon the information in the original record." Lawson at 315.
 {¶ 40} For the sake of clarity, we will address appellant's first assignment of error after analyzing his second, third, and fourth assignments of error. In his second assignment of error, appellant argues the trial court erred by denying the petition without conducting an evidentiary hearing on his claim of a violation of his Miranda and Edwards rights. Appellant specifically contends that, after he exercised his right to remain silent and his right to counsel on October 14, 1999, Detectives Nites and Hoolihan violated Edwards by questioning appellant about the murders when appellant was arrested for unrelated offenses on October 20, 1999. Appellant also argues that he was not fully informed of his Miranda rights incident to his October 20, 1999 statement.[4] According to appellant, his murder conviction and sentence are void because they were secured through the use of this evidence which was obtained in violation of Edwards and Miranda. Ultimately, our review finds no merit in appellant's argument.
 {¶ 41} As an initial matter, we note that this assignment is barred by the doctrine of res judicata. See, e.g., Szefcyk at syllabus; Jackson at 161. Appellant's Edwards claim is predicated upon the October 14, 1999 interview. Although appellant's October 14, 1999 interview was not made part of the record at the trial court level, it would have been available through discovery. Further, appellant would presumably have had his own recollection of the events on October 14, 1999. Therefore, appellant's counsel could have made this interview part of the record at the trial level and argued then that the re-interrogation of appellant on October 20, 1999 violated appellant's Edwards rights because he had invoked his right to remain silent and his right to an attorney on October 14, 1999. Thus, the assignment is barred by the doctrine of res judicata.
 {¶ 42} Despite this, we will address the merits of appellant's claim, and it is not well-taken. In Edwards v.Arizona (1981), 451 U.S. 477, the United States Supreme Court held that "[w]hen an accused has invoked his right to havecounsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to police-initiated interrogation after being again advised of his rights. An accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation until counsel has been made available to him, unless the accused has himself initiated further communication, exchanges, or conversations with the police." (Emphasis added.) Id. at paragraph b of the syllabus.
 {¶ 43} However, an individual has a right to counsel only when he is in custodial interrogation, as a suspect, or once adversary proceedings have commenced and he becomes a defendant. See, e.g., Davis v. United States (1994), 512 U.S. 452,456-457. The person can only invoke that right during those times. Id. As such, Edwards rights only apply when an individual first invokes his right to counsel at a time when he has a right to do so, i.e., when he is in custodial interrogation or once adversary proceedings have commenced. Edwards
at paragraph b of the syllabus.
 {¶ 44} Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda at 444. Police-dominated situations are the functional equivalent of custodial interrogation. A police-dominated situation is a situation with restraints comparable to those of a formal arrest. Berkemer v. McCarty
(1984), 468 U.S. 420, 440.
 {¶ 45} Further, the Second Circuit Court of Appeals explained that a police officer is free to approach a person and ask a few questions, without effecting a seizure. United States v.Madison (C.A.2, 1991), 936 F.2d 90, 92. "In determining whether a seizure has occurred, * * * the individual's actual freedom must be curtailed. * * * [A] person is `seized' only when, by means of physical force or show of authority, his freedom of movement is restrained." (Citation omitted.) Id. at 93. "Whenever an officer restrains the freedom of a person to walk away, that person is seized." Tennessee v. Garner (1995), 471 U.S. 1, 7. "[T]he cases turn on the degree of voluntariness that an individual maintains in an encounter with police." Madison
at 93.
 {¶ 46} Courts must examine all of the circumstances surrounding the interrogation and determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action in order to determine whether the situation was a functional equivalent of custody. Stansbury v. California (1994), 511 U.S. 318, 325. Questioning cannot be considered custodial when a suspect came voluntarily to the police station and there was no indication that the questioning took place in a context where the suspect's freedom to depart was restricted in any way. Oregon v.Mathiason (1977), 429 U.S. 492, 495.
 {¶ 47} In the instant matter, appellant concedes that he was not in custody when he was interviewed on October 14, 1999. Despite this, appellant argues that he was in a police-dominated situation that was the functional equivalent of custodial interrogation, and, thus, the October 20, 1999 interrogation violated his Edwards and Miranda rights. This argument is without merit.
 {¶ 48} The record indicates that appellant voluntarily accompanied the officers to the police station for questioning on October 14, 1999.[5] The interview began with Detective Hoolihan advising appellant that he was not under arrest and was free to leave at any time, with Hoolihan making sure appellant understood this. The crux of the interview included identification of appellant by means of his Social Security number and birth date, the officers reading him his Miranda
rights and explaining why they do so even when an interviewee is not under arrest. This was followed by appellant's refusal to answer questions without the presence of an attorney. In total, appellant was told twice that he was free to leave and told four times that he was not under arrest. The interview lasted only eight minutes. Appellant then exercised his right to leave and left the police station.
 {¶ 49} By exercising his right to leave, appellant demonstrated awareness that he was not in custody during the October 14, 1999 interview. As a result, he had no right to counsel at that time. Logic compels that if appellant had no right to counsel during the first encounter, then there was noEdwards violation during the second encounter. As such, appellant cannot rely on his October 14, 1999 interview as a basis to argue that the Warren Police improperly reinitiated an interview with him on October 20, 1999, when he again was fullyMirandized.
 {¶ 50} In summary, appellant's second assignment of error is not well-taken. The assignment is barred by res judicata because the October 14, 1999 interview was available through discovery, and appellant's trial counsel could have filed a motion to suppress his October 20, 1999 statements. In the alternative, the merits of the assignment of error do not entitle appellant to relief. Edwards is inapplicable to the matter sub judice, and the detectives did not improperly reinitiate questioning with appellant on October 20, 2000. The trial court did not abuse its discretion by denying appellant a hearing on this issue, and appellant's second assignment of error is without merit.
 {¶ 51} In appellant's third assignment of error, he argues the trial court erred by denying him an evidentiary hearing on his claim that he was denied meaningful access to counsel. Specifically, appellant alleges that he was denied the ability to confer privately with counsel during trial recesses because there was always at least one, and usually two, deputies in the room with appellant and his counsel.[6] Appellant argues his rights were violated under the Fourth andSixth Amendments to the United States Constitution and Sections One, Two, Ten, and Sixteen, Article I, of the Ohio Constitution, and appellant contends the trial was unfair and the death sentences are void. We disagree.
 {¶ 52} As an initial matter, we note that the trial court erred by finding that this claim is barred by the doctrine of res judicata. See, e.g., Szefcyk at syllabus; Jackson at 161. Indeed, appellant could have raised this issue at the trial level, and appellant himself argues that his trial counsel did raise this issue with the trial court. However, the record is void of anything indicating that appellant objected, on the record, at the trial level, to any infringement of his right to confer with counsel during trial recesses. As such, appellant was limited to raising this issue in a petition for postconviction relief. The trial court erred by determining that this assignment is barred by res judicata. This error, however, amounts only to harmless error.
 {¶ 53} The merits of appellant's third assignment of error demonstrate that it is not well-taken. To warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the burden of providing evidence demonstrating a cognizable claim of constitutional error. R.C. 2953.21(C); Hessler
at ¶ 33. In an affidavit attached to his postconviction petition, appellant stated that "[d]uring the trial of my case, I was never able to meet privately with counsel while in the Courthouse. We could meet privately in the jail, but not in the Courthouse. During court recesses in my trial, when it was not practical to return to the jail to discuss the testimony of witnesses, there was always at least one deputy in the room with us." This is supported by an affidavit by appellant's counsel. According to appellant's counsel, he repeatedly complained and objected to these arrangements, but he was overruled.[7]
 {¶ 54} Neither affidavit details any specific incident in which deputies were intrusive or otherwise interfered with private conversations. The record is void of any objection or side bar conferences concerning this issue, and the record also fails to indicate any denial of appellant's right to confer with counsel. Further, appellant has failed to indicate any prejudice due to this alleged denial of his right to confer with counsel. He fails to detail how the presence of security affected his own communication with his counsel in a way that would have affected the outcome of the trial. Appellant's mere apprehension and oversensitivity about the presence of security is not enough to obtain a hearing on this issue.
 {¶ 55} The limited restrictions on appellant's privacy served the important interests of court security and flight risk and were proper under the circumstances in this matter. See, e.g.,Morgan v. Bennett (C.A.2, 2000), 204 F.3d 360, 367. Although the trial court erred by barring this claim based on res judicata, this amounts only to harmless error. The merits of this claim reveal that it is not well-taken. Based upon the above analysis, the trial court did not abuse its discretion by denying appellant a hearing on this issue. Appellant's third assignment of error is without merit.
 {¶ 56} In appellant's fourth assignment of error, he argues the trial court erred by denying his petition without conducting an evidentiary hearing on his claim that he was under a disability caused by epilepsy. Specifically, appellant alleges that on October 20, 1999, just before being questioned by the detectives, appellant suffered an epileptic seizure while he was detained in a holding cell. Consequently, appellant contends that he was incapable of effecting a knowing, voluntary, and intelligent waiver of his constitutional liberties and did not know what he was doing when he waived his Miranda rights. This argument is without merit.
 {¶ 57} As an initial matter, we note that appellant's claim is barred by res judicata. See, e.g., Szefcyk at syllabus;Reynolds at 161. Appellant's alleged seizure and resulting confusion would have been apparent to his trial counsel during pre-trial preparation. The October 20, 1999 interview was audiotaped and videotaped, and hospital jail records presumably existed. These materials would have been available through discovery. Further, appellant himself would presumably have had some recollection of the events on October 20, 1999. Thus, appellant's trial counsel could have addressed this issue in a motion to suppress at the trial level, but appellant's trial counsel failed to do so for tactical reasons. Accordingly, this argument is barred by res judicata.
 {¶ 58} Nevertheless, we will address the merits of appellant's assignment. First, we note that to warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the burden of providing evidence demonstrating a cognizable claim of constitutional error. R.C. 2953.21(C);Hessler at ¶ 33. As stated earlier, "* * * in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." Jackson at 112.
 {¶ 59} In this matter, appellant alleges that he had an epileptic seizure in a holding cell shortly before being questioned on October 20, 1999. Appellant provided his own affidavit in support of this argument. However, appellant provided no evidence, other than his own self-serving affidavit, indicating that he actually suffered from epilepsy, was prone to seizures, or had a seizure on that particular day. Appellant also failed to indicate prejudice.
 {¶ 60} In his appellate brief, appellant argues that the detectives were aware of his seizure. Our careful review of the record reveals nothing which indicates a seizure or demonstrates that appellant was suffering from any disability, especially a recent epileptic seizure. Further, Detective Nites testified that appellant was able to effectively communicate during the interview.
 {¶ 61} Appellant has submitted no evidence corroborating his claim, and his own self-serving affidavit cannot compel a hearing. State v. Combs (1994), 100 App.3d 90, 98, citingState v. Kapper (1983), 5 Ohio St.3d 36, 37-38. Accordingly, appellant failed to meet his burden to demonstrate a cognizable claim of constitutional error. It was well within the trial court's discretion to doubt appellant's credibility and deny him a hearing on this claim. See, e.g., Jackson at 112. Appellant's fourth assignment of error is without merit.
 {¶ 62} We now turn to appellant's first assignment of error. In this assignment, appellant argues the trial court erred in denying the petition without conducting an evidentiary hearing when he supplied sufficient evidentiary material corroborative of the allegations in his petition. Appellant specifically argues the trial court erred by denying him a hearing on his claim of ineffective assistance of counsel. We disagree.
 {¶ 63} When a petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence demonstrating that his defense was prejudiced by his counsel's ineffectiveness. State v. Pankey (1981),68 Ohio St.2d 58, 58, quoting Jackson at syllabus. If a petitioner fails to do so, no evidentiary hearing is required. Id. at 58. InState v. Pierce (1998), 127 Ohio App.3d 578, 586, the court held that in asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the following two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668,687: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.
 {¶ 64} In Ohio, it is presumed that a properly licensed attorney is competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. "Courts must be highly deferential to counsel's performance and will not second-guess trial strategy decisions."State v. Dixon, 101 Ohio St.3d 328, 2004-Ohio-1585, at ¶ 52, citing State v. Tibbetts (2001), 92 Ohio St.3d 146, 166. "`Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel.'" State v. Madrigal,87 Ohio St.3d 378, 389, 2000-Ohio-448, quoting Kimmelman v. Morrison
(1986), 477 U.S. 365, 384. To overcome the presumption of trial counsel's competency, a postconviction petitioner must submit sufficient operative facts or evidentiary documents that, if proven, would show that the petitioner was prejudiced by ineffective assistance of counsel. State v. Smith (1987),36 Ohio App.3d 162, 163.
 {¶ 65} As an initial matter, we note that the trial court erred by barring this cause of action by the doctrine of res judicata. Indeed, appellant raised ineffective assistance of counsel in five propositions of law in his direct appeal to the Supreme Court of Ohio. In his direct appeal, appellant argued theories of ineffective assistance of counsel based upon evidence that was contained within the trial court record. However, in his petition for postconviction relief, appellant alleged an entirely new theory of ineffective assistance of counsel. This new theory, i.e., his trial counsel was ineffective for failing to considerEdwards and move to suppress the October 20, 1999 statements, was predicated upon an October 14, 1999 interview which was not contained within the record. This new theory of ineffective assistance of counsel could only be raised in a petition for postconviction relief.
 {¶ 66} The fact that an appellant raised ineffective assistance of counsel claims in a direct appeal does not bar such a claim in a petition for postconviction relief, provided the claim in the postconviction exercise is predicated upon evidence outside the record. We must look to the substance of the argument itself to determine whether it is barred by res judicata. In this matter, appellant raised an entirely new theory of ineffective assistance of counsel in his petition for postconviction relief, and the trial court erred by barring this claim by the doctrine of res judicata. This error, however, amounts only to harmless error.
 {¶ 67} The merits of appellant's assignment of error demonstrate that appellant failed to submit materials containing sufficient operative facts to overcome the presumption of his trial counsel's competency and demonstrate deficient performance by his trial counsel or prejudice to him. Appellant demonstrated that his counsel devised a well-reasoned strategy when admitting his October 20, 1999 statement during trial. Further, as previously discussed, Edwards is inapplicable to this matter, and the materials demonstrate that appellant made a valid waiver of his Miranda rights on October 20, 1999. We will not second-guess trial strategy.
 {¶ 68} In summary, the trial court's erroneous finding that appellant's first assignment of error is barred by res judicata amounts only to harmless error. The substance of this assignment of error reveals that the trial court did not abuse its discretion by finding no substantive grounds for relief in this cause of action. Appellant's first assignment of error is without merit.
 {¶ 69} Appellant's four assignments of error are without merit. We hereby affirm the judgment of the trial court.
Grendell, J., concurs in judgment only.
O'Neill, J., concurs in judgment only with Concurring Opinion.
[1] When referring to the victims and the non-police witnesses in this matter, we will omit surnames to protect their privacy.
[2] Only the October 20, 1999 interview, and not the October 14, 1999 interview, was made part of the record at the trial court level. The October 14, 1999 interview made it into the record as part of the postconviction exercise.
[3] Again, the October 14, 1999 interview was not made part of the record at that time. The October 14, 1999 interview made it into the record as part of the postconviction exercise.
[4] Appellant did not actually put forth this argument in his petition for postconviction relief. Therefore, we are not permitted to address this argument. Further, the argument is barred by the doctrine of res judicata; appellant specifically argued in his direct appeal that he was not fully informed of hisMiranda rights when questioned on October 20, 1999.
[5] Detective Hoolihan testified that appellant voluntarily accompanied officers to the police station for questioning on October 14, 1999.
[6] In appellant's appellate brief, he also argues that his right to counsel was breached due to the seating arrangements during trial. He stated that, while sitting at the defense table, his ability to confer privately with his trial counsel was impeded by the surrounding state witnesses and security officers. However, appellant did not specifically argue this in his postconviction petition. Accordingly, we are not permitted to address this argument.
[7] As will be discussed, no objections or complaints of this kind exist within the record.