DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Erin Cureton, appeals a denial of a motion for a new trial and a petition for post-conviction relief entered by the Medina County Court of Common Pleas. We affirm.
 I. {¶ 2} This is the third time this case has been before this court. We, therefore, reiterate the facts of this case from the direct appeal in State v. Cureton (Oct. 9, 2002), 9th Dist. No 01CA3219-M.
 {¶ 3} Cureton and his wife, Deborah, agree that on October 10, 1999, they were arguing heatedly while driving from a bar to the home of Cureton's parents. Before reaching their destination, Deborah suffered serious damage to her right eye, cheekbone, and jawbone. At trial, however, they testified to different explanations for these injuries.
 {¶ 4} Deborah testified that Cureton punched or elbowed her in the right side of her face. Cureton, on the other hand, claimed that he was innocent of any wrongdoing. He testified that Deborah lost control of the car and hit her head on the steering wheel when the car went off the road into a ditch. Although the parties' testimony conflicted on the actual source of the injuries, both parties further testified that Deborah required medical attention.
 {¶ 5} Deborah did not immediately seek medical aid, but instead drove ten minutes to the home of Cureton's parents while Cureton sat in the passenger seat helping Deborah steer and shift gears. Once there, Cureton ran inside his parents' home to get Deborah a towel and ice. He attempted to administer aid to Deborah in his parents' driveway, but he later took her inside their house. Cureton was unable to stop the bleeding, and after spending approximately five minutes at his parents' home, he decided to drive Deborah to the hospital.
 {¶ 6} On the way to the hospital, Cureton begged Deborah to lie to the hospital staff and tell them that she injured herself in a car accident. She was persuaded to offer the fictitious story because, at the time, she was in such pain that "[she] didn't want to say anything, [she] just wanted her head fixed. [She] didn't even want to deal with it[.]" Deborah continued to lie, even after she was released from the hospital, because Cureton told her that her father would go to the police if he knew that Cureton was the cause of her injuries. Deborah believed that if that happened, a court would determine that she was an unfit mother and take her child away; this belief was reinforced by Cureton's assurance that such a result would occur if she told the police that Cureton caused her injuries.
 {¶ 7} Although Deborah waited almost a year before telling the police about her husband's assault, she waited less than a week after the accident before telling a close friend, Chad Daubert, about the attack. Deborah later told her brother and two other friends about the facts surrounding the incident. In November of 1999, she eventually told Cureton's parents that she was never in a car accident and that Cureton was the cause of her injuries. Deborah finally told the police that her husband assaulted her on June 7 or 8 of 2000.
 {¶ 8} Cureton was indicted on one count of felonious assault, and was found guilty by a jury as charged in the indictment. The trial court sentenced Cureton to a term of four years in prison. Cureton appealed, raising as error the sufficiency and manifest weight of the evidence, jury instructions, admission of character evidence, and ineffective assistance of counsel. This court affirmed in a journal entry dated October 9, 2002. Subsequently, on January 3, 2003, Cureton applied to have the appeal reopened, claiming ineffective assistance of counsel and prosecutorial misconduct. This court denied the application to reopen on May 29, 2003. While the motion to reopen was pending, on February 13, 2003, Cureton filed for post-conviction relief pursuant to R.C. 2953.21, seeking to vacate or set aside the judgment, and a motion for a new trial pursuant to Crim.R. 33. The trial court denied both motions. The denial of the motions is the subject of the current appeal. Cureton raises three assignments of error.
 II. Assignment of Error No. 1
"The trial court abused its discretion and erred to the prejudice of the Appellant when it denied Appellant the relief under O.R.C. 2953.21, the post-conviction relief." (SIC.)
 {¶ 9} In his first assignment of error, Cureton argues that trial court erred when it denied his motion to vacate or set aside the judgment pursuant to R.C. 2953.21. In the motion, Cureton argued that ineffective assistance of trial counsel and prosecutorial misconduct entitled him to the requested relief. These arguments are without merit.
 {¶ 10} Under the doctrine of res judicata, a defendant is precluded from raising in a post-conviction relief petition, an issue that was raised or could have been raised by the defendant on direct appeal from the judgment. State v. Ishmail (1981), 67 Ohio St.2d 16, 18. Issues properly before a court on a petition for post-conviction relief are issues which could not have been raised on direct appeal due to the fact that the evidence supporting such issues is dehors the record. State v.Milanovich (1975), 42 Ohio St.2d 46.
 {¶ 11} Regarding the claim of prosecutorial misconduct, Cureton claims that the prosecutor withheld evidence and permitted false, misleading, or incomplete testimony from prosecution witnesses during the original trial because the evidence withheld was exculpatory. Specifically, Cureton claims that the prosecutor withheld: a Medina City Police Department report of an incident with Deborah which occurred on March 15, 2000; an admission form from Northland Counseling Services arising from the same incident as is reported in the Medina Police Department report; a diagnostic assessment from Northland Counseling Services dated April 19, 1999; a copy of Deborah's driving record from September 30, 1991 through July 14, 2000; the notes from the physician who treated Deborah at Medina Hospital on October 10, 1999; and an Ohio State Highway Patrol report of an incident involving an altercation between Cureton and another motorist.
 {¶ 12} Crim R. 16 specifies:
"(A) Demand for discovery
"Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.
"(B) Disclosure of evidence by the prosecuting attorney
"(1) * * *
"(c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents * * * available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial * * *.
"(d) Reports of examination and tests. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations * * * made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney.
"* * *
"(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment * * *."
 {¶ 13} All the documents, which Cureton alleges were withheld, were in existence at the time of the trial. Cureton claims that if he had had these documents at trial, he could have used them to impeach prosecution witnesses. If Cureton had requested the documents pursuant to Crim.R. 16 and they were not disclosed, Cureton could have raised this issue upon direct appeal. Likewise, his argument that he could have impeached witnesses at trial with the documents, which would have resulted in his acquittal, could have also been raised on direct appeal. Therefore, these arguments regarding prosecutorial misconduct are barred by the doctrine of res judicata.
 {¶ 14} Regarding the ineffective assistance of counsel claim, we note that Cureton has raised this issue twice before. In his direct appeal, he alleged ineffective assistance of trial counsel and was overruled. In a motion to reopen his appeal, he alleged ineffective assistance of appellate counsel, also overruled. Cureton argues, however, that his claim is not barred by res judicata, because it depends upon evidence which is dehors the record.
 {¶ 15} Res judicata applies if the petition for post-conviction relief does not include any material dehors the record in support of the claim for relief. State v. Combs (1994), 100 Ohio App.3d 90, 97. Where a petition raises a claim which was sufficient on its face to raise a constitutional issue, and the files and records of the case did not affirmatively disprove the claim, the petition states a substantive ground for relief. State v. Milanovich (1975), 42 Ohio St.2d 46, 50. However, this exception to res judicata exists only when the evidence dehors the record is new, competent, relevant and material evidence.State v. Jones (Dec. 13, 2002), 11th Dist. No 2001-A-0072.
 {¶ 16} In his petition, Cureton states:
"Defense counsel failed to perform any investigation into the claims of the state, such as interviewing potential witnesses, examining the crime scene or subpoenaing (sic) medical records. As a result of this failure to investigate, he was unable to present any defense to many of the prosecution's claims against petitioner. Further, counsel failed to make use of the evidence that he had at his disposal during trial which would have contradicted testimony given by State's witnesses."
 {¶ 17} Thus, Cureton avers that he was denied his Sixth Amendment right to effective assistance of counsel. Cureton's evidence consists of: a Montville Township Police report dated November 25, 1998; a Medina County Sheriff's Department report dated June 12, 1999; deposition testimony from Deputy Seibert of the Medina County Sheriff's Department, author of the June 12, 1999 report, whose testimony was regarding the events giving rise to the report; deposition testimony from Officer Brown of the City of Lakewood Police Department who testified about a domestic disturbance between Cureton and Deborah which occurred in 1999; and deposition testimony from Officer Matylowski, also of the Lakewood Police Department, who testified regarding a September 1999 incident wherein he was dispatched to the Cureton home and Deborah was intoxicated. The events discussed in the police reports predate Cureton's trial and, therefore, none of this is new evidence. As a participant in the events leading to police intervention, Cureton was aware of the existence of the police reports at the time of the trial. The testimony of the police officers related only to the content and origin of the police reports, and the events to which they relate. Knowing that the reports existed and knowing which police officers responded to the disturbances, Cureton could have utilized their testimony at trial, if advantageous. Therefore, Cureton has not shown ineffective assistance of counsel based upon new evidence dehors the record, and this argument is barred by res judicata.
 {¶ 18} Cureton's first assignment of error is overruled.
 Assignment of Error No. 2
"The Trial Court abused its discretion and erred to the prejudice of the Appellant when it denied Appellant's motion for new trial based on prosecutorial misconduct and newly discovered evidence."
 {¶ 19} In the second assignment of error, Cureton argues that Deborah's testimony at the couples' divorce hearing was inconsistent with her trial testimony and, therefore, amounts to newly discovered evidence. Cureton avers that he should be permitted a new trial to permit a jury may hear Deborah's inconsistent testimony and find her to be incredible. Further, Cureton claims that the prosecutor's attempts to assist Deborah amounted to a "personal relationship" which precluded the prosecutor from pursuing the truth in his case, and is also newly discovered evidence, which warrants a new trial. We disagree.
"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro
(1947), 148 Ohio St. 505, syllabus.
"While State v. Petro (1947), 148 Ohio St. 505, 36 O.O. 165,76 N.E.2d 370, stands for the proposition that newly discovered evidence that merely impeaches or contradicts other evidence is not enough to warrant the granting of a new trial, Petro does not establish a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial." Daytonv. Martin (1987), 43 Ohio App.3d 87, syllabus.
 {¶ 20} The trial court ruling states that the newly discovered evidence proposed by Cureton is "a series of supposed contradictory statements made by the complaining witness at trial and then at a subsequent divorce hearing." The trial court determined, based upon review of the alleged discrepancies, that the evidence was merely cumulative and "not of such character as would convey * * * a strong probability of a different result at trial." We agree.
 {¶ 21} "A ruling on a motion for new trial on the ground of newly discovered evidence is within the discretion of the trial court and, in the absence of a clear showing of abuse of discretion, the ruling will not be disturbed on appeal." State v. Smith (1986), 30 Ohio App.3d 138,139 citing State v. Williams (1975), 43 Ohio St.2d 88, paragraph two of the syllabus.
 {¶ 22} A careful review of Cureton's presentation of new evidence reveals a litany of minor discrepancies which do not address the elements of the charged offense and are not, therefore, material. Cureton posits that:
"the key issue at trial was that of causation — whether Deborah Cureton's injuries were caused by a car accident as the defendant maintained or whether [her] injuries were caused by the defendant assaulting her as the prosecution alleged."
 {¶ 23} We begin by noting that Cureton presented no physical evidence of an accident; there was no damage to the car, to the ditch where the accident supposedly happened, or to Cureton's person. Likewise, the investigating police agency found no evidence that an automobile accident had occurred which could have explained Deborah's injuries. Cureton does not present any new evidence to support his contention that the injuries were from an automobile accident.
 {¶ 24} What Cureton did present is contradictory testimony that is immaterial. For example, at trial Deborah testified that a friend told her, before the assault, that he would testify for her in court; at the divorce hearing, she testified that the friend said he told Cureton to pay more attention to his wife. The friend's comments are not mutually exclusive or conflicting statements; neither do they address the elements of felonious assault. In another example, Cureton correctly states that at trial Deborah testified, "all of a sudden an arm came towards me and the next thing I know, Erin had punched or elbowed me." Cureton claims this is directly contradicted in Deborah's divorce testimony where she said, "[t]he next thing I know, my head just whipped back." However, later in her divorce testimony Deborah, in answer to a question asking what happened, stated, "What happened was Erin had bashed me in the head." Cureton argues that because her divorce testimony does not include mention of "an arm coming towards her face" Deborah's testimony is inconsistent, proving her memory is faulty or she's not credible. Cureton's remaining examples of inconsistent testimony are similar in vein, equally immaterial, and hypercritical.
 {¶ 25} This "newly discovered evidence" does not promote confidence in a strong probability of a different result at trial. This is true especially given Cureton's lack of evidence to support his own version of the facts. Further, Cureton had his own credibility questioned at trial due to certain fabrications and criminal events. We find no clear showing of an abuse of discretion in denying a new trial based upon this "newly discovered evidence."
 {¶ 26} Included within this assignment of error is a charge of prosecutorial misconduct for failure to investigate the claims of Deborah Cureton. This argument is also without merit.
 {¶ 27} The Ohio Supreme Court has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors "including most constitutional violations." Id. quoting United States v.Hasting (1983), 461 U.S. 499, 508-509. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995),72 Ohio St.3d 545, 557. In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the prosecutor's acts prejudiced the substantial rights of the defendant. See State v. Smith (1984), 14 Ohio St.3d 13, 14. Moreover, the defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. See State v. Loza (1994), 71 Ohio St.3d 61,78.
 {¶ 28} Cureton argues that the prosecutor's failure to investigate independently Debbie Cureton's claims constitutes prosecutorial misconduct. Cureton again bases this argument upon his obsessive preoccupation with the inconsistencies in Deborah's testimony. They are no more a cause for a new trial under this argument then they were under the previous argument.
 {¶ 29} Cureton's second assignment of error is overruled.
 Assignment of Error No. 3.
"The Trial Court violated the Appellant's sixth amendment rights to compulsory process and confrontation of witnesses when it refused to allow Appellant to call Deborah Cureton to the witness stand to testify at the oral hearing on December 6, 2002."
 {¶ 30} In the third assignment of error, Cureton argues that the trial court erred when it refused to permit Deborah to testify at his motion hearing. Cureton argues that he submitted transcripts of Deborah's testimony from his trial and from the divorce hearing, and the inconsistent testimony contained in the transcripts proves that Deborah committed perjury. Cureton claims that Deborah's credibility was central to the purpose of the hearing; therefore, the trial court denied him the constitutional right to confront her when it would not permit her testimony. These arguments are without merit.
 {¶ 31} In Ohio, post-conviction relief proceedings are civil in nature. State v. Scudder (1998), 131 Ohio App.3d 470, 474. See, also,State v. Phillips (Feb. 27, 2002), 9th Dist. No. 20692. Consequently, Cureton has no Sixth Amendment rights at a post-conviction hearing.Scudder, 131 Ohio App.3d at 474.
 {¶ 32} As for Cureton's arguments under the Crim.R. 33 motion, the Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination. Pennsylvania v. Ritchie (1987),480 U.S. 39, 51. "The opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." (Emphasis sic.) Id. at 52. Cureton has presented no authority that states his right to confront witnesses extends to a Crim.R. 33 hearing on a motion for a new trial.
 {¶ 33} Cureton's third assignment of error is overruled.
 III. {¶ 34} Cureton's three assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
SLABY, P.J., BATCHELDER, J. CONCUR