[Cite as *State v. Fry*, 2012-Ohio-2602.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

CLARENCE FRY, JR.

    Appellant

C.A. No.     26121

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2005-08-3007

DECISION AND JOURNAL ENTRY

Dated: June 13, 2012

---

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Clarence Fry, appeals from a judgment of the Summit County Court of Common Pleas, which denied his petition for post-conviction relief. We affirm in part and reverse in part.

I

{¶2} In June 2006, Fry was convicted by jury of (1) aggravated murder with two capital offense specifications, (2) aggravated murder, (3) murder, (4) aggravated burglary, (5) two counts of domestic violence, and (6) tampering with evidence. Fry was sentenced to death. In May 2007, while Fry's direct appeal was pending with the Ohio Supreme Court, he filed a petition for post-conviction relief and a motion requesting the trial judge voluntarily recuse herself. The trial court held his case in abeyance pending a resolution of his direct appeal. Fry's convictions were affirmed by the Ohio Supreme Court in March 2010.

{¶3} In January 2011, the State filed a motion to dismiss Fry's petition for post-conviction relief. Subsequently, Fry filed motions requesting funding for experts, discovery, and to amend his petition. The court denied Fry's motions and his post-conviction petition without a hearing, finding that his post-conviction claims were barred by res judicata. Fry now appeals and raises five assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR FRY'S GROUNDS FOR RELIEF.

{¶4} In his first assignment of error, Fry argues that the trial court erred in finding that his claims were barred by res judicata. Specifically, Fry argues that his claims are not barred by res judicata because they are supported by evidence outside of the record.

> "Under the doctrine of res judicata, a final judgment of conviction bars a * * * defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised * * * on an appeal from that judgment." *State v. Perry,* 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. "Res judicata applies if the petition for post-conviction relief does not include any material dehors the record in support of the claim for relief." *State v. Cureton,* 9th Dist. Nos. 03CA0009-M & 03CA0010-M, 2003-Ohio-6010, ¶ 15.
>
> * * *
>
> "Presenting evidence outside the record[, however,] does not automatically defeat the doctrine of res judicata." *State v. Stallings*, 9th Dist. No. 19620, 2000 WL 422423, *1 (Apr. 19, 2000), citing *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.1995). "Such evidence 'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]'" *Id.*, quoting *Lawson* at 315. Evidence outside the record "must demonstrate that the claims advanced in the petition could not have been fairly determined on direct appeal based on the original trial court record without resorting to evidence outside the record." *Id.*

*State v. Dovala*, 9th Dist. No. 08CA009455, 2009-Ohio-1420, ¶ 8-10.

**{¶5}** "[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion * * *." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court's finding must be "supported by competent and credible evidence." *Gondor* at ¶ 58.

**{¶6}** Fry's post-conviction petition raised fourteen grounds for relief.[1] To facilitate the analysis, we will address these grounds for relief out of order.

Exculpatory Evidence

**{¶7}** In his fifth ground for relief, Fry argued that he was denied a fair trial because the State failed to provide exculpatory evidence that had been presented to the grand jury. This argument is the same as Fry's proposition of law XII in his appeal to the Ohio Supreme Court. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 65-69. In that appeal, the Supreme Court held that Fry's argument was "totally speculative" and the trial court did not abuse its discretion when it denied his request for such evidence. *Id.* at ¶ 69. Because Fry's fifth ground for relief was raised on appeal and he has failed to present sufficient evidence outside of the record to show that his claim could not have been fairly determined on direct appeal, it is now barred by res judicata. The trial court did not abuse its discretion in finding Fry's fifth ground for relief was barred.

---

[1] Fry filed two motions to amend his petition, which sought to add three additional grounds for relief. There is no indication, however, that the trial court granted these motions. The motions to amend, therefore, are presumed to be denied. *See Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 13.

Lack of Minorities in Jury Venire

**{¶8}** In his third ground for relief, Fry argued that his sentence is void or voidable because the trial court failed to "ensure the inclusion of African American jurors on the panel."

**{¶9}** In the trial transcripts, Fry and his counsel both expressed concern about the lack of African Americans in the jury venire. The court proceeded to conduct a hearing on the matter and called the Summit County Jury Commissioner as a witness to testify about the process used in selecting the jury pool. The court provided great detail in the record to support its finding that the "methodology used to select this jury is the same random manner that has been upheld repeatedly by the courts."

**{¶10}** Fry's argument that his due process rights were violated when the trial court failed to ensure that there were African Americans in the jury venire does not require evidence outside of the record. The record contained sufficient evidence of the number of African Americans in the jury pool and detailed evidence of how that jury pool was selected. Because Fry's third ground for relief could have been raised on appeal based on evidence in the record, it is now barred by res judicata, and the trial court did not abuse its discretion in so holding.

Ineffective Assistance

**{¶11}** In ten of his grounds for relief, Fry raised claims of ineffective assistance of counsel. To facilitate our analysis, we combine several of the grounds for relief.

a. Plea

**{¶12}** In his eleventh ground for relief, Fry argued that his attorneys were ineffective because they did not sufficiently counsel Fry about his decision to reject the plea agreement.

**{¶13}** First, Fry argued that his counsel was ineffective because they did not spend enough time reviewing the State's offer with him. Fry cites to statements in the record made by

his trial counsel to support his argument. Because this argument could have been raised on appeal based on evidence in the record, it is now barred by res judicata.

{¶14} Second, Fry argued that his counsel was ineffective because they did not request assistance from outside counsel or from Fry's family members to help persuade him to accept the plea offer. The trial court found that, while the issue was barred by res judicata, the argument also failed on the merits. Because Fry's argument relies on information (i.e., personal affidavits) outside of the record, we do not agree that this issue is barred by res judicata, but do agree that the argument fails on the merits.

{¶15} Generally, a claim of ineffective assistance of counsel requires a claimant to satisfy a two-prong test. First, he or she must prove that trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he or she must show that trial counsel's deficient performance caused him or her prejudice. *State v. Srock*, 9th Dist. No. 22812, 2006-Ohio-251, ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶16} Under certain circumstances, a person claiming ineffective assistance of counsel is presumed to have been prejudiced and need not make a showing of such. *See United States v. Cronic*, 466 U.S. 648 (1984). One such situation in which the defendant is entitled to a presumption of prejudice is "where the defendant is subject to a 'complete denial of counsel,' including those situations where a defendant was denied the presence of counsel at a 'critical stage.'" *Johnson v. Bradshaw*, 205 Fed.Appx. 426, 430 (6th Cir.2007), quoting *Cronic* at 659.

{¶17} Fry argues that *Cronic* applies because he was "constructively" denied counsel during his plea bargaining phase, which has been recognized as a critical stage. *Lafler v.*

*Cooper*, ___U.S.___, 132 S.Ct. 1376, 1385-1386 (2012); *Missouri v. Frye*, ___U.S.___, 132 S.Ct. 1399, 1407 (2012). It is possible that a defendant may be "constructively" denied counsel when "performance of counsel [is] so inadequate that, in effect, no assistance of counsel is provided." *Cronic* at 654, fn. 11.

{¶18} Neither the record nor the post-conviction relief exhibits support Fry's argument that he was constructively denied counsel at the plea bargaining stage. Fry was informed of the plea offer, which his counsel discussed with him for an hour one week before the start of trial. Fry confirmed his rejection of the plea offer on the record. There is no evidence that Fry was denied access to his counsel. The crux of Fry's argument is his belief that his trial counsel did not try hard enough to convince him to accept the State's plea offer. This does not rise to the level of *Cronic*, and therefore, the *Strickland* test applies. *Compare Hunt v. Mitchell*, 261 F.3d 575 (6th Cir.2001) (defendant was presumed to be prejudiced when his counsel was appointed on the day trial began and counsel's request for an additional ten minutes to consult with defendant before the start of trial was denied).

{¶19} Assuming arguendo that Fry's counsel was deficient for failing to solicit assistance from outside counsel or family members to help convince Fry to accept the plea offer, Fry has not established prejudice. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye* at 1409. Fry presented no evidence, except a self-serving affidavit, to show that he would have accepted the plea offer if his counsel had consulted outside counsel or his family members. *See Bradley*, 42 Ohio St.3d at paragraph three of the syllabus.

In reviewing a petition for post-conviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.

*State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph one of the syllabus.

**{¶20}** There is evidence in the record that Fry did *not* want to consult with his family members about his decisions, and that he would not likely have been persuaded by his family members even if he had met with them about the plea offer. Fry repeatedly told the court that he did not want to discuss his decision to waive mitigation with anyone. Fry did ultimately meet with his mother, but still refused to present mitigation evidence.

**{¶21}** Because Fry has not established prejudice, his allegation that his counsel was ineffective for failing to seek assistance to help persuade him to accept the plea is without merit.

### b. Mitigating Evidence

**{¶22}** In his seventh, eighth, and ninth grounds for relief, Fry argued that because of a complete breakdown in his attorney-client relationship he did not present any mitigation evidence.

**{¶23}** In his direct appeal to the Ohio Supreme Court, Fry challenged his waiver to present mitigation evidence. *Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, at ¶ 168. The Supreme Court confirmed the trial court's finding that Fry's waiver was knowingly and intelligently made. *Id.* at ¶ 168-177. To the extent that Fry now challenges his waiver to present mitigation evidence, it is barred by res judicata.

**{¶24}** Fry argued that his counsel was ineffective because they did not involve the family members in trying to dissuade Fry from waiving his right to present mitigation evidence.

Fry offers affidavits from his mother and two step-brothers which contain statements that each would have talked with Fry about his decision not to present mitigating evidence.

**{¶25}** As discussed above, under the circumstances of this case, the *Strickland* test applies. Therefore, to prevail on his claim of ineffective assistance of counsel, Fry must show that his counsel's performance was deficient and that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 687.

**{¶26}** The trial court conducted an *Ashworth* hearing to determine whether Fry's waiver of his right to present mitigating evidence was knowingly and intelligently made. *See State v. Ashworth*, 85 Ohio St.3d 56 (1999), paragraph one of the syllabus. During that hearing the court asked Fry if he wanted to talk to his mother, his brothers, or anybody else about his decision to waive his right to present mitigation evidence. Despite repeatedly responding no, Fry did meet with his mother for 30-45 minutes after which he informed the court that he still did not want to present any mitigation evidence. Moreover, because Fry knowingly and intelligently waived his right to present mitigation evidence, he cannot use this valid waiver to show that he was prejudiced.

**{¶27}** Because Fry has not established prejudice, his allegation that his counsel was ineffective for failing to "involve family members in trying to dissuade Fry from waiving his right to present mitigation evidence" is without merit.

c. <u>Rejection of Plea and Decision to Forego Mitigation</u>

**{¶28}** In his thirteenth ground for relief, Fry argued that because of his trial counsel's deficient performance he rejected the State's plea offer and his decision not to present mitigation evidence was uninformed.

**{¶29}** Having already concluded that Fry's counsel was not deficient in presenting the plea offer and Fry's decision to waive presentation of mitigation evidence was knowingly and intelligently made, this argument is without merit.

### d. Failure to Impeach Witness

**{¶30}** In his second, fourth, and sixth grounds for relief, Fry argued that his attorneys were ineffective for failing to impeach a State's eyewitness. Specifically, Fry argues that his attorneys were ineffective for failing to point out differences in J.B.'s statements to the police and his testimony to the jury.

**{¶31}** The trial court found that "it was trial counsel's tactical decision not to cross-examine" J.B. about his statements to the police. Reasonable strategic decisions by trial counsel are afforded deference. *Strickland*, 466 U.S. at 681.

**{¶32}** J.B. was five years old when he watched his grandmother get stabbed to death. He was six years old when he testified at Fry's trial. At trial, J.B. testified that Fry was carrying a bowl and a knife when he entered the apartment and that he told Fry not to go inside. His statement to the police did not include this information. However, the police reports do show that other witnesses made statements consistent with J.B.'s testimony. Specifically, witnesses told the police that a man carrying a bowl and a knife approached 824 Ina Court. After reviewing the record, trial counsel's decision not to impeach J.B. was a reasonable tactical decision. Therefore, we cannot conclude that the trial court abused its discretion in so holding.

### e. Racism

**{¶33}** In his first ground for relief, Fry argued that his attorneys were ineffective because issues of race resulted in a complete breakdown of the attorney-client relationship.

**{¶34}** The Ohio Supreme Court found that Fry failed to request that the trial court appoint an African-American attorney to represent him. Moreover, so long as an indigent defendant is adequately represented, he "does not have the constitutional right to choose the attorney who will represent him or her at state expense." *Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, at ¶ 64.

**{¶35}** To the extent that Fry's argument is not barred by res judicata, it fails on the merits. First, Fry is not entitled to the *Cronic* presumption of prejudice because he was not denied counsel, constructively or otherwise. Second, Fry has not established that his counsel's performance was deficient. We cannot conclude that there was a breakdown in the attorney-client relationship because of race merely because Fry did not heed his counsel's advice. The record reflects that Fry had adequate representation at trial.

f.   Lack of Rapport

**{¶36}** In his tenth ground for relief, Fry argued that he was effectively denied his right to counsel because his attorneys failed to ever establish a rapport with him. The only evidence submitted in support of this argument is Fry's self-serving affidavit.

**{¶37}** The trial court "may * * * judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun*, 86 Ohio St.3d at paragraph one of the syllabus. After reviewing the record, we cannot conclude that the trial court abused its discretion in rejecting Fry's argument that his counsel was so deficient that he was effectively denied representation.

Fry's Testimony

**{¶38}** In his twelfth ground for relief, Fry argued that his sentence is void or voidable because he was not allowed to testify at trial, and because the trial court failed to obtain from Fry

a knowing, intelligent waiver of his right to testify. This argument is the same as Fry's proposition of law IX in his appeal to the Ohio Supreme Court. *Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, at ¶ 119-120. The Court held that "[n]othing in the record suggests that Fry wished to testify but was denied the opportunity to do so." *Id*. at ¶ 120. In his petition for post-conviction relief, however, Fry included evidence *outside* of the record to support his claim. Specifically, Fry submitted what he claimed to be notes taken by his attorney during a December 2005 interview. These notes support Fry's argument that he wanted to testify at trial, and should have been considered by the trial court. Given that the trial court did not ask Fry on the record whether he wanted to testify and that Fry has relied on evidence outside of the record, Fry's claim could not have been fairly determined on direct appeal. *See Dovala*, 2009-Ohio-1420, at ¶ 18. Therefore, Fry's claim that he was denied his right to testify is not barred by res judicata.

{¶39} The trial court erred when it denied Fry's claim under the doctrine of res judicata and failed to assess the credibility of the evidence presented in his petition. We remand for the court to consider the evidence presented as it relates to this claim.

Cumulative Error

{¶40} In his fourteenth, and final, ground for relief, Fry argued that even assuming the grounds asserted are not individually sufficient to warrant relief that, taken together, the cumulative effect of the errors merit relief. Having concluded that the case should be remanded, we decline to address this issue. *See* App.R.12(A)(1)(c).

{¶41} Fry's first assignment of error is overruled in part and sustained in part.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN DISMISSING FRY'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING.

{¶42} In his second assignment of error, Fry argues that the trial court erred in dismissing his claims without holding a hearing.

{¶43} "[A] criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing." *Calhoun*, 86 Ohio St.3d at 282. The court need only grant a hearing if it determines that there are substantive grounds for relief. R.C. 2953.21(C).

{¶44} Having concluded that the case should be remanded for the court to consider the evidence related to Fry's twelfth ground for relief, we decline to address Fry's second assignment of error. *See* App.R. 12(A)(1)(c).

Assignment of Error Number Three

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT FUNDING FOR EXPERT ASSISTANCE IN VIOLATION OF FRY'[S] RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Assignment of Error Number Four

THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW FRY TO CONDUCT DISCOVERY IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶45} In his third and fourth assignments of error, Fry argues that the trial court erred in denying his request for discovery and his requests to fund psychological, neuropsychological, and substance abuse experts. We disagree.

{¶46} "[T]he standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 592 (1996). Because a post-conviction proceeding is a collateral attack on a judgment, "a petitioner receives no more rights than those granted by statute." *Calhoun*, 86 Ohio St.3d at 281. R.C.

2953.21 does not provide for discovery. *State v. Smith*, 9th Dist. No. 98CA007169, 2000 WL 277912, *3 (Mar. 15, 2000). "This Court has repeatedly held that there is no right to conduct discovery in post-conviction proceedings." *Id. Accord State v. Benner*, 9th Dist. No. 18094, 1997 WL 549605, *2 (Aug. 27, 1997); *State v. Cooey*, 9th Dist. Nos. 15895 & 15966, 1994 WL 201009, *17 (May 25, 1994).

{¶47} Because he was not entitled to discovery, the court did not abuse its discretion when it denied Fry's requests. Fry's third and fourth assignments of error are overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED WHEN [IT] DENIED FRY'S MOTION FOR VOLUNTARY RECUSAL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶48} In his fifth assignment of error, Fry argues that the trial court erred when it denied his motion for a voluntary recusal of the trial judge. Specifically, Fry argues that the judge should have voluntarily recused herself because she "made several prejudicial comments during the sentencing hearing."

{¶49} The trial court did not address Fry's motion for voluntary recusal. The court found that his motion should have been filed as an affidavit of disqualification with the Ohio Supreme Court pursuant to R.C. 2701.03. Before filing an affidavit for disqualification a party may choose to file a motion with the trial court requesting that the trial judge voluntarily recuse himself or herself. However, if that motion is denied the party seeking disqualification must comply with R.C. 2701.03.

> A party may not simply ask a trial judge to voluntarily recuse himself [or herself] and then raise the issue on appeal when the trial judge refuses.
>
> * * *

> The procedure for seeking disqualification of a judge is set forth in R.C. 2701.03. *See State v. Ramos*, 88 Ohio App.3d 394, 398 (9th Dist.1993). Matters of disqualification of trial judges lie within the exclusive jurisdiction of the chief justice of the Supreme Court of Ohio and his [or her] designees. *Kondrat v. Ralph Ingersoll Publishing Co.*, 56 Ohio App.3d 173, 174 (11th Dist.1989). This Court is without authority to review a matter involving the disqualification of a judge. *Id.*, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978).

*State v. O'Neal*, 9th Dist. No. 07CA0050-M, 2008-Ohio-1325, ¶ 15. The court's refusal to address Fry's motion for voluntary recusal was a denial. Once the court had denied his motion, Fry was required to file an affidavit of disqualification with the Ohio Supreme Court, pursuant to R.C. 2701.03. Fry failed to follow the disqualification procedures. Because we are without authority to review this matter, Fry's fifth assignment of error is overruled.

III

**{¶50}** Fry's first assignment of error is sustained in part, and overruled in part. His second assignment of error is not yet ripe for review, and his remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

DICKINSON, J.
CONCURRING IN JUDGMENT ONLY.

{¶51} I agree with the majority's conclusion, but write separately on several issues to explain my reason for affirming the trial court's judgment. Regarding the appropriate standard of review, the Ohio Supreme Court has explained that, in post-conviction relief cases, the trial court serves a gatekeeping role. *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, ¶ 51. "Before granting a hearing on a [post-conviction relief] petition . . . , the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C). In making that determination, "the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." *Id*. "[W]hether there are

substantive grounds for relief" means "whether there are grounds to believe that 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" *State v. Calhoun*, 86 Ohio St. 3d 279, 283 (1999) (quoting R.C. 2953.21(A)(1)).

**{¶52}** "[A] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing [if] the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St. 3d 279, paragraph two of the syllabus (1999). According to the Ohio Supreme Court, it is "not unreasonable to require the defendant to show in his petition for postconviction relief that such errors resulted in prejudice before a hearing is scheduled." *Id.* at 283.

**{¶53}** The Supreme Court has also held that the trial court's gatekeeping role is entitled to deference. *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, ¶ 52. This includes allowing the trial court to assess the credibility of affidavits. *Id.*

**{¶54}** In his fifth ground for relief, Mr. Fry noted that, although some of the offenses for which the Grand Jury indicted him required that he acted purposefully, others required a less culpable mental state. He reasoned that the Grand Jury, therefore, must have received evidence suggesting that his acts were less than purposeful, and argued that the State failed to disclose that exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The majority has correctly noted that Mr. Fry made this same argument on direct appeal to the Ohio Supreme Court. *State v. Fry*, 125 Ohio St. 3d 163, 2010-Ohio-1017, ¶ 65-69. The Supreme Court concluded that his argument was speculative. *Id.* at ¶ 69.

**{¶55}** The doctrine of res judicata "bars the assertion of claims against a valid, final judgment of conviction that have been raised or could have been raised on appeal." *State v. Ketterer*, 126 Ohio St. 3d 448, 2010-Ohio-3831, ¶ 59 (citing *State v. Perry*, 10 Ohio St. 2d 175, paragraph nine of the syllabus (1967)). The presentation of competent, relevant, and material evidence outside the record, however, "may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307, 315 (12th Dist. 1995); *State v. Schlee*, 11th Dist. No. 97-L-121, 1998 WL 964291, *3 (Dec. 31, 1998) (concluding that appellant could make the same argument that he had made on direct appeal in his petition for post-conviction relief because he had supplemented his argument "with his affidavit containing facts outside the trial court record."). The question is whether the issue "could not fairly have been determined without resort to evidence dehors the record." *State v. Smith*, 17 Ohio St. 3d 98, 101 fn.1 (1985); *State v. Starks*, 9th Dist. No. 25617, 2011-Ohio-2772, ¶ 8.

**{¶56}** The only evidence that Mr. Fry submitted with his petition for post-conviction relief in support of his fifth ground for relief was a copy of the indictment. Mr. Fry acknowledged that the issue was "not fully developed" and that he would have to rely on additional discovery to support his claim. The trial court, however, denied his motion for discovery, which was within its discretion. *State v. Craig*, 9th Dist. No. 24580, 2010-Ohio-1169, ¶ 6. Mr. Fry did not present any additional evidence in support of his fifth ground for relief with his brief in opposition to the State's motion to dismiss. Accordingly, because Mr. Fry has failed to establish that his fifth ground for relief could not be fairly determined without resort to evidence outside the record, the trial court properly concluded that it was barred by the doctrine of res judicata.

{¶57} In his third ground for relief, Mr. Fry argued that the trial court deprived him of the right to due process by not ensuring that the jury panel would include African-Americans. He also argued that his trial counsel was ineffective for not ensuring that the jury panel represented a fair cross-section of the community. The trial court determined that Mr. Fry's claim was barred by the doctrine of res judicata.

{¶58} During the jury selection process, Mr. Fry objected, noting that there were not many potential African-American jurors. After some discussion, the trial court continued with the selection process. At the end of the day, Mr. Fry objected to the process again, and the court told the parties that it would consider the issue the following day. The next day, the court received testimony from the Summit County Jury Commissioner regarding the method in which the potential jurors were selected. After both parties presented their arguments, the court determined that the selection process was fair and that it would not meddle with it just to ensure a certain racial composition.

{¶59} Mr. Fry submitted several articles with his petition for post-conviction relief regarding racial bias in the jury selection process. Although these articles were not part of the record, Mr. Fry did not establish that he could not have submitted them at trial. The court gave Mr. Fry the opportunity to submit materials in support of his bias allegation. Mr. Fry did not assert that he did not have enough time to adequately research the issue and he did not request a continuance. Accordingly, he failed to demonstrate that his claim could not have been fairly presented at trial or on direct appeal. While Mr. Fry also alleged ineffective assistance of counsel in his third ground for relief, he failed to develop an argument in support of his claim.

{¶60} In his eleventh ground for relief, Mr. Fry argued that his trial lawyers were ineffective because they did not spend enough time with him discussing whether he should

accept the State's plea offer. The United States Supreme Court recently confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). It also confirmed that the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims of ineffective assistance at the plea bargain stage. *Lafler*, 132 S. Ct. at 1384. It further held that, to establish prejudice in "the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." *Id*.

**{¶61}** Although Mr. Fry presented several exhibits in support of his argument that his trial lawyers did not spend enough time discussing the plea offer with him, the only evidence that he presented to support his claim that he would have accepted the offer if his lawyers had been competent was his affidavit. The trial court noted that Mr. Fry's affidavit was "self-serving," and, apparently, determined that his claim that he would have accepted the plea offer if he had better counsel was not credible. As previously mentioned, the trial court serves a gatekeeping role regarding petitions for post-conviction relief and may assess the credibility of affidavits submitted in support of such petitions. *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, ¶ 52. Given Fry's assertion that the reason he stabbed Tamela Hardison was because she struck him in the head with an ashtray and told him that she was going to kill him, and given that the only witness to the event was a five-year-old boy, the trial court exercised proper discretion when it rejected Mr. Fry's contention that he would have accepted a sentence of 30 years to life if his lawyer had only explained the plea offer better. *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1385 (2012) ("[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in

light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").

{¶62} In his seventh ground for relief, Mr. Fry argued that the breakdown in his relationship with his trial lawyers led him to decide not to put on any mitigating evidence and to rely, instead, on the appellate process to get his convictions overturned. He argued that, if his lawyers had adequately explained the effect that his failure to put on mitigating evidence would have, he could have had his mother testify about his difficult childhood. According to Mr. Fry, his mother would have been able to tell the jury about his physically abusive father, the economic struggles that his family faced, and the racism that he had endured in society.

{¶63} In his eighth ground for relief, Mr. Fry made similar claims to his seventh ground regarding the reason that he did not present any mitigating evidence. He also asserted that his brother Frank could have testified about the violence they endured as children, his struggle with drugs, and how racism had affected his life. He also presented a report from a professor of African-American studies who had reviewed his life story and explained how his personal experiences had marred his opinion of white people such that he was unable to trust his white attorneys or trust in the fairness of the trial, which was conducted by a white judge with an entirely white jury. The professor also suggested that Mr. Fry's lawyers' cultural ignorance prevented them from developing rapport with Mr. Fry and adequately representing him at trial.

{¶64} In his ninth ground for relief, Mr. Fry repeated his assertions about the reasons he did not present mitigating evidence. He also argued that his brother Lawrence could have testified about the dynamics of his family, his close attachment to his mother, and his struggles

with drug addiction. According to him, his brother could have also testified about the good things he had done with his life and how he had tried to stop using illicit drugs.

{¶65} The trial court denied Mr. Fry's seventh, eighth, and ninth grounds for relief because the Ohio Supreme Court had determined that, even if Mr. Fry had presented mitigating evidence, it would not have outweighed the aggravating circumstances beyond a reasonable doubt. *State v. Fry*, 125 Ohio St. 3d 163, 2010-Ohio-1017, ¶ 234. In its opinion, the Supreme Court noted that, although Mr. Fry had chosen not to present any mitigating evidence, his lawyers had presented the court with a copy of a psychological evaluation that his lawyers said outlined the mitigating evidence they could have presented. That report noted that Mr. Fry's father had abused his mother, that his father had died when Mr. Fry was age five, that Mr. Fry's mother was disabled, which limited her ability to supervise and financially support him, that Mr. Fry did not have appropriate role models, and that his brain development was disrupted by his early exposure to illicit drugs. The report also noted that Mr. Fry had served in the Marines and that he had been trained to act instinctively when under threat of physical harm.

{¶66} Although the affidavits of Mr. Fry's family members are more thorough than the report of the psychologist, they touch on the same subjects. The report noted his abusive father, his unstable and difficult family environment, and his struggle with drug addiction. While the report did not discuss his experience with racism, Mr. Fry presented that evidence to show why he did not trust his lawyers and chose not to present any mitigating evidence, not to establish a factor that mitigated his offenses. *See* R.C. 2929.04(B) (listing mitigating factors). Because Mr. Fry has not raised any mitigation issues that the Ohio Supreme Court has not already fairly considered, I agree that the trial court properly denied his seventh, eighth, and ninth grounds for relief.

{¶67} In his first, tenth, and thirteenth grounds for relief, Mr. Fry argued that his trial counsel's conduct led to a breakdown in the attorney-client relationship. He argued that he told his counsel that he was concerned about being represented by lawyers who were not African-American, but they failed to effectively address his concerns. Because they did not take his concerns seriously, he did not trust them, which led to him making uninformed decisions about whether to accept a plea agreement and whether to present mitigation evidence.

{¶68} Mr. Fry supported his arguments with evidence that was outside the trial record. The Ohio Supreme Court, however, has held that the "Sixth Amendment does not guarantee rapport or a meaningful relationship between client and counsel." *State v. Ketterer*, 111 Ohio St. 3d 70, 2006-Ohio-5283, at ¶ 101 (quoting *State v. Henness*, 79 Ohio St. 3d 53, 65 (1997)). Accordingly, the trial court correctly concluded that Mr. Fry was not entitled to post-conviction relief on his lack-of-trust-in-counsel claims.

{¶69} Finally, regarding Mr. Fry's counsel's cross-examination of J.B., in his second ground for relief, Mr. Fry argued that his lawyer should have inquired about the fact that J.B. told police that Mr. Fry asked Ms. Hardison about the location of his clothes before attacking her, which would have emphasized that he only attacked her out of frustration, not because she intended to testify against him in a criminal proceeding. Mr. Fry's lawyer, however, did ask J.B. several times about the fact that he heard Mr. Fry ask Ms. Hardison "[w]here are my clothes?" Mr. Fry, therefore, failed to establish that his lawyer's performance was deficient.

{¶70} In his fourth ground for relief, Mr. Fry argued that his trial lawyers were ineffective when they cross-examined J.B. because they did not emphasize the fact that Mr. Fry was a regular visitor to J.B.'s residence. According to Mr. Fry, because J.B. was used to seeing him come to the residence, it would not have made sense for J.B. to stop playing when J.B. saw

him. Mr. Fry argued that J.B.'s illogical actions could have been used to undermine his credibility.

{¶71} The fact that Mr. Fry was a regular visitor to J.B.'s residence does not mean that it was illogical for J.B. to stop playing when Mr. Fry came over on the day of the attack. It would have been normal for a child J.B.'s age to greet a familiar face, especially since it is undisputed that Mr. Fry sometimes gave J.B. candy. Moreover, J.B. testified that he told Mr. Fry, before the attack, not to go into his residence. In light of his knowledge that Mr. Fry was not allowed in his residence, it was even more appropriate for J.B. to approach Mr. Fry when he saw him that day.

{¶72} In his sixth ground for relief, Mr. Fry argued that his counsel was ineffective for not cross-examining J.B. about the fact that he did not tell police on the day of the attack that Mr. Fry was carrying a knife and bowl when he saw him before the attack. Mr. Fry argued that the fact that J.B. failed to tell police about such a significant detail undermined his credibility. J.B., however, was not the only witness who testified that they saw Mr. Fry carrying a knife and bowl to the residence. Accordingly, it is not likely that J.B.'s oversight when he spoke to police would have discredited him.

APPEARANCES:

TYSON FLEMING and KIMBERLY RIGBY, Assistant State Public Defenders, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.