OPINION
Appellant, Roger R. Gau, appeals the judgment entry of the Ashtabula County Court of Common Pleas denying his petition for postconviction relief following his conviction of multiple counts of rape of his own daughter beginning when she was seven years old. At issue is whether appellant's claims are barred by res judicata. For the reasons that follow, we affirm. *Page 2 
Appellant was indicted on March 6, 2003, on twenty-one counts of rape, felonies of the first degree, in violation of R.C. 2907.02. The indictment was based on a pattern of incestuous sexual assaults perpetrated by appellant on his minor daughter over a period of seven years from January 1, 1996 through October 31, 2002. Appellant pled not guilty to all counts. On May 3, 2004, the jury trial began. On May 5, 2004, the trial court dismissed the jury, and on May 13, 2004, declared a mistrial after the jury informed the court that it was unable to reach a verdict.
On June 28, 2004, the state filed an amended indictment setting forth seven counts of rape, alleging appellant raped his daughter on seven occasions during the same period, i.e., from January 1, 1996 through October 31, 2002, as opposed to the original twenty-one. Appellant was tried on the amended indictment before a jury beginning on August 15, 2005.
The victim testified at trial that her father's sexual attacks started when she was seven years old. During the first incident appellant entered the victim's bedroom and digitally penetrated her vagina. The victim testified that the next incident occurred when appellant had vaginal intercourse with her. This pattern of activity occurred more than one hundred times. The victim testified that appellant would also "stick his tongue inside my private area." The victim testified this pattern of sexual abuse continued without reprieve from the time she was seven until she was twelve years of age. She said appellant's sexual abuse changed when she reached age twelve and began menstruating. From that point on, appellant would no longer insert his penis into her vagina, but continued to assault the victim by the other noted means of sexual torment. *Page 3 
The victim described various methods she employed to try and prevent the abuse. She testified, "I started wearing my clothes to bed * * * to try to make it harder * * * for him to be able to do things." The victim testified that she began attending church in 1999. Following her church attendance, the victim confronted her father to get him to stop. She testified, "I told him that it was wrong * * * I told him to stop." According to the victim, appellant reacted by holding her hand over a lighter with the flame lit and telling his daughter that "bad little girls deserve to get burned." Appellant also told her that if she told anyone, he would burn her. Counts six and seven occurred in 2001 and 2002, after appellant's threats to burn his daughter if she revealed the abuse. He also told her that "he was teaching [her] to protect [herself] against all the sickoes [sic] out there."
The evidence also showed that on many occasions, the victim told appellant to stop and attempted to resist his attacks, but to no avail. In addition, the victim created physical barriers between herself and appellant to try to prevent his attacks on her. She testified, "I put the laundry, the dirty clothes and toys, even garbage on the floor * * * in front of my bed * * * around my room and in the hallway." Further, the victim testified that appellant had to pull her legs apart to accomplish the rapes. Dr. Stephanie Dewar from the Tri-County Advocacy Center conducted an examination of the victim following her report of sexual abuse. Dr. Dewar's report, as well as her testimony, substantiated that appellant was the named perpetrator who committed multiple acts of sexual abuse on the victim over a period of years beginning when she was seven years old. According to the doctor's report, appellant restrained the victim by holding her still.
The jury found appellant guilty on all seven counts of rape as charged in the amended indictment. Appellant was sentenced on November 7, 2005. He was *Page 4 
sentenced to life imprisonment for counts one through five because the jury found that he purposely compelled the victim to submit by force. R.C. 2907.02(B). Appellant was sentenced to three years imprisonment for counts six and seven. All sentences were ordered to run concurrently to one another.
Appellant appealed the trial court's judgment of conviction, and this court affirmed his conviction in State v. Gau, 11th Dist. No. 2005-A-0082, 2006-Ohio-6531, appeal not accepted for review (2007),113 Ohio St.3d 1487.
Thereafter, appellant filed a motion for postconviction relief. The trial court denied the motion, finding that the issues asserted by appellant could have been asserted on direct appeal and that there was nothing in appellant's petition suggesting substantive grounds for relief. Appellant timely appeals, asserting three assignments of error. For his first assigned error, appellant contends:
"THE APPELLANT'S WAS [SIC] DENIED DUE PROCESS OF LAW UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION BECAUSE THE INADMISSIBILITY OF DR. STEPHEN GUERTIN'S REPORT DENIED APPELLANT A FAIR TRIAL, AND ESTABLISHED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
Appellant argues the trial court erred by dismissing his petition for postconviction relief because his trial counsel was ineffective in not calling Stephen Guertin, M.D. as a witness on his behalf at the trial. In State v Noling, 11th Dist. No. 98-P-0049, 2003-Ohio-5008, this court held:
"* * * [A] defendant challenging his conviction through a petition for postconviction relief is not automatically entitled to a hearing.State v. Calhoun, 86 Ohio St.3d 279, *Page 5 
282, 1999-Ohio-102 * * *. `Only after he meets his initial burden to show substantive grounds for relief from the files and records of the case and, often, evidentiary materials dehors the record is a hearing required.' State v. Davie (Sept. 25, 1998), 11th Dist. No. 97-T-0175, 1998 Ohio App. LEXIS 4540 * * *, at [*6]. Stated differently, `* * * before a hearing is granted, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate * * *"' that errors did occur and that the errors resulted in prejudice. (Emphasis sic.) Calhoun at 283, quoting State v. Jackson
(1980), 64 Ohio St.2d 107 * * *, syllabus. Moreover, `* * * if the court can resolve the averments contained within the petitioner's request based upon the material contained within the petition, and the files and records, it may properly dismiss the matter without conducting a hearing.' State v. Hill (June 16, 1995), 11th Dist. No. 94-T-5116, 1995 Ohio App. LEXIS 2684 * * *, at [*4]." Id. at ¶ 22.
In cases where no hearing was held, such as the case sub judice, an appellate court reviews the trial court's decision to grant or deny a petition for postconviction relief de novo. See State v. Jordan, 11th Dist. No. 2006-T-0087, 2007-Ohio-1067, at ¶ 8. A petition for postconviction relief may be dismissed without a hearing if a petitioner fails to submit evidentiary material that sets forth sufficient operative facts to demonstrate substantive grounds for relief.Jackson, supra, at 110.
We note that, while appellant filed a letter in the trial court from Dr. Guertin to his trial counsel indicating certain opinions, appellant failed to attach any evidentiary materials in support of his petition. An unsworn letter is not evidence. For this reason alone, the trial court would have been justified in dismissing appellant's petition. *Page 6 
However, a petition for postconviction relief may also be dismissed based upon res judicata where a petitioner could have raised the issues asserted in his petition at trial or on direct appeal. State v.Perry (1967), 10 Ohio St. 2d 175, at paragraphs seven and eight of the syllabus.
"`Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or couldhave been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.'" (Emphasis sic.) State v. Szefcyk, 77 Ohio St.3d 93, 95, 1996-Ohio-337, quotingPerry, supra, at paragraph nine of the syllabus.
In State v. Reuschling, 11th Dist. No. 2008-A-0004, 2008-Ohio-4970, this court held that in a petition for postconviction relief, "`[t]o overcome the res judicata bar, evidence offered dehors the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record.'" Id. at ¶ 26, quoting State v. Lawson (1995), 103 Ohio App.3d 307, 315. (Citation omitted.)
"For a defendant to avoid dismissal of the petition by res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court's record,and it must not be evidence that existed or was available for use at thetime of trial. * * *" (Emphasis added and citations omitted.) State v.Adams, 11th Dist. No. 2003-T-0064, 2005-Ohio-348, at ¶ 39.
In the present case, appellant's claim of ineffective assistance of trial counsel was barred by res judicata because appellant was aware of Dr. Guertin's alleged *Page 7 
opinions prior to his trial. The doctor's letter was issued November 4, 2004, and appellant's trial began on August 15, 2005. Further, Dr. Guertin's medical report is referenced in the trial record. Appellant's trial counsel attempted to put the report in evidence, and the trial court excluded the report for lack of a proper foundation. Moreover, appellant raised the issue of ineffective assistance of trial counsel in his direct appeal. Therefore, counsel's failure to call Dr. Guertin as a witness could have been asserted on direct appeal as part of appellant's ineffective assistance claim.
As a result, res judicata barred appellant from asserting his present claim of ineffective assistance of trial counsel in his postconviction petition since he could have raised it on direct appeal without resort to evidence dehors the record. State v. Cole (1982), 2 Ohio St.3d 112, syllabus.
However, even if this argument was not barred by res judicata, it would not be well taken. In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. In postconviction proceedings, the petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate the lack of competent counsel and also that his defense was prejudiced by counsel's ineffectiveness. Jackson, supra, at 111. A petitioner must present more than "broad assertions" or "general conclusory allegations." Id.
In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. Strickland, supra, at 688. A court "must indulge a strong *Page 8 
presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance.State v. Phillips (1995), 74 Ohio St.3d 72, 85; State v. Clayton (1980),62 Ohio St. 2d 45, 49. Further, the result of tactical trial decisions need not be favorable to the defense in order for counsel to be considered "effective." State v. Awkal (1996), 76 Ohio St.3d 324, 337.
In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.Strickland at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. Id. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v.Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland at 697.
Appellant's petition alleged that his trial counsel was ineffective due to his failure to call Dr. Guertin as a witness. However, as noted supra, appellant failed to submit any affidavits or other evidentiary materials in support of his claim. It is therefore unknown whether Dr. Guertin would have testified as a witness, what his testimony would have been, and whether he would have also testified to matters that would not have been favorable to appellant.
We note the state's expert Dr. Dewar testified there were no physical findings of sexual abuse. Appellant is suggesting that, if called to testify as a witness, this is how Dr. Guertin would have testified. While appellant has not submitted evidentiary materials containing sufficient operative facts to demonstrate that he was prejudiced by *Page 9 
the decision of his trial counsel to not call Dr. Guertin as a witness, since the testimony of the state's expert would have been consistent with Dr. Guertin's alleged testimony on this issue, appellant has failed to demonstrate how he was prejudiced by the failure of his trial counsel to call Dr. Guertin as a witness. Appellant's trial counsel was therefore not ineffective.
Moreover, the decision whether or not to call a witness is a trial tactic that generally will not sustain a claim of ineffective assistance. State v. Coulter (1992), 75 Ohio App.3d 219, 230; State v.Williams (1991), 74 Ohio App.3d 686, 695. Because trial counsel must be given great deference in matters of strategy, decisions concerning the choice of witnesses must be given great latitude. We must presume Dr. Guertin's testimony would not have been completely favorable, and that trial counsel's decision not to call him as a witness was based on an assessment of the overall value of his testimony. After thoroughly reviewing the record, we find that the decision not to call Dr. Guertin as a defense witness was a trial tactic that did not constitute deficient performance. Further, appellant has failed to demonstrate that there is a reasonable probability that the result of his trial would have been different if this witness had been called to testify.
Appellant's first assignment of error is not well taken.
For his second assignment of error, appellant contends:
"THE APPELLANT'S [SIC] WAS DENIED DUE PROCESS OF LAW UNDER THE14TH AMENDMENT TO THE U.S. CONSTITUTION WHEN THE STATE PROSECUTOR FAILED TO DISCLOSE EXCULPATORY EVIDENCE PRIOR TO TRIAL." *Page 10 
Appellant next argues that, because the state did not provide in discovery copies of colposcope digital photos of the victim's pelvic examination taken by the state's doctor, the state violated his rights under Brady v. Maryland (1963), 373 U.S. 83. Appellant states in his brief that he discovered the existence of these photos when the state's doctor testified concerning them at his trial, and that he discussed these photos with his trial counsel at that time.
Since appellant was aware of the existence of these photos and the state's alleged failure to provide them to his attorney at the time of his trial, he could have asserted this issue on direct appeal. This claim is therefore barred by res judicata.
Appellant's second assignment of error is not well taken.
For his third and final assignment of error, appellant asserts:
"THE APPELLANT WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL. THE CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL IS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION. IN ADDITION, OHIO HAS ENACTED REVISED CODE 2945.71 TO 2945.73 WHICH MANDATE SPECIFIC TIME REQUIREMENTS FOR THE STATE TO BRING AN ACCUSED TO TRIAL."
First, we note appellant failed to raise this issue in his petition for postconviction relief. There is, therefore, no evidence before us on this issue. Further, this court in Reuschling, supra, recently held that where an appellant does "not raise [an] argument in his petition for postconviction relief * * * this court is precluded from reviewing it." Id. at *Page 11 
¶ 31. Moreover, appellant could have asserted this issue in the trial court as well as in his direct appeal. It is therefore also barred by res judicata.
Appellant's third assignment of error is not well taken.
For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1