[Cite as *State v. Knapp*, 2013-Ohio-870.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0035** |
| MICHELE L. KNAPP, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2009 CR 452.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Jason D. Winter, Holly Marie Wilson,* and *Courtney J. Trimacco*, Reminger Co., L.P.A., 1400 Midland Building, 101 Prospect Avenue West, Cleveland, OH 44115 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Michelle[1] L. Knapp, appeals the denial of her Petition for Post-Conviction Relief by the Ashtabula County Court of Common Pleas. The issue before this court is whether a trial court abuses its discretion by denying a postconviction relief petition without hearing, where the petition is based on trial

---

1. Although the defendant-appellant's first name is spelled "Michelle," the appeal follows the captioning of the Indictment.

counsel's false representations to his client, inadequate voir dire of jurors, and failure to retain experts capable of rebutting the testimony of the State's witnesses/evidence. For the following reasons, we affirm the decision of the court below.

{¶2} On July 29, 2011, following a jury trial, Michelle Knapp was found guilty of one count of Aggravated Vehicular Homicide, a felony of the second degree in violation of R.C. 2903.06(A)(1); one count of Aggravated Vehicular Homicide, a felony of the third degree in violation of R.C. 2903.06(A); one count of Failure to Stop after an Accident, a felony of the third degree in violation of R.C. 4549.02(A) and (B); and one count of Operating a Vehicle while under the Influence, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a).

{¶3} The charges against Knapp arose from the death of Melanie Moretti. The evidence presented at trial is described in *State v. Knapp*, 11th Dist. No. 2011-A-0064, 2012-Ohio-2354, ¶ 8-47.

{¶4} On September 12, 2011, following a sentencing hearing, the trial court imposed a prison term of six years for second degree Aggravated Vehicular Homicide, merged the third degree Aggravated Vehicular Homicide charge with the second degree charge, imposed a prison term of one year for Failure to Stop after an Accident, and imposed a jail term of six months for Operating a Vehicle while under the Influence. The court ordered the sentences for second degree Aggravated Vehicular Homicide and Failure to Stop after an Accident to be served consecutively with each other and concurrently with the sentence for Operating a Vehicle while under the Influence, for an aggregate prison term of seven years. Additionally, the court imposed a lifetime license suspension and ordered the paying of court costs.

2

**{¶5}** On October 11, 2011, Michelle Knapp filed a Notice of Appeal, assigned 11th Dist. Case No. 2011-A-0064.

**{¶6}** On May 18, 2012, Knapp filed a Petition for Post-Conviction Relief, based on ineffective assistance of trial counsel.

**{¶7}** In support of the Petition, the following evidentiary materials were attached thereto.

**{¶8}** Michelle Knapp stated that she retained the services of Attorney William Bobulsky on December 14, 2009, prior to her initial contact with law enforcement. Before travelling with her to meet with the State Highway Patrol, Bobulsky did not have "a one-on-one confidential attorney-client communication" with Knapp; did not conduct any investigation of the underlying accident; did not advise her that she could refuse to make a statement or make a statement at a later time and the legal consequences thereof; and did not "discuss what the substance of [her] statement would be." As a result, Knapp provided law enforcement an incriminating statement, "[u]nder the shock of having just learned that [she] had stricken Melanie Moretti, and having received no guidance from Mr. Bobulsky."

**{¶9}** Knapp further stated that she advised Attorney Bobulsky about a potentially incriminating OnStar call from the night of the accident. Bobulsky responded that there was no need for concern because the State had not produced a record of the OnStar call in discovery. At trial, the State sought to introduce the OnStar call as evidence. Despite the failure to produce the call in discovery and the lack of authenticating witnesses, Bobulsky stipulated to the call's admissibility. During its

deliberations, the jury asked to hear the call and review the transcripts. The trial court also referenced the call in its sentencing deliberations.

{¶10} Knapp further stated that Attorney Bobulsky advised her that it would be necessary to retain "expert witnesses in the disciplines of human factors, visibility, accident reconstruction, and toxicology." Knapp authorized Bobulsky to retain any necessary experts and Bobulsky told her that experts would appear on her behalf at trial. Despite Bobulsky's assurances, Knapp learned at the commencement of trial that no expert witnesses would be called on her behalf.

{¶11} Knapp further stated that Attorney Bobulsky failed to advise her of the right to use peremptory challenges during jury selection, and failed to make any challenge to the following witnesses: Bonnie Smith, whose husband had been killed in an automobile accident and who worked as a drug and alcohol counselor; Joshua McNutt, who was related to one of the State's witnesses; and Sharon Mirando, who stated the belief that it was illegal to consume any amount of alcohol and drive.

{¶12} Knapp further stated that Attorney Bobulsky failed to investigate, "other than the internet," the State's witness, Catherine Rotko, the only witness at trial to affirmatively testify that Knapp was impaired. Lois Colley, a private investigator, submitted an affidavit, reporting that Rotko had been previously charged with possession of drugs and domestic violence, and was fired from BW3 for stealing.

{¶13} Knapp further stated that Attorney Bobulsky failed to inquire about her problems with her night vision, or hearing loss, both of which she suffered from at the time of the accident.

4

**{¶14}** Knapp further stated that Attorney Bobulsky advised her that he would seek to change venue, due to her inability to receive a fair trial in Ashtabula County. Despite Bobulsky's assurances, no effort was made to change venue.

**{¶15}** Knapp further stated that Attorney Bobulsky failed to argue that "Moretti was the sole proximate cause of her own death."

**{¶16}** Knapp further stated that Attorney Bobulsky instructed her to accept no plea offer that involved incarceration, despite the State's willingness to reduce the charges, because "the State's case was weak." Bobulsky failed to advise her of the "realistic exposure to a conviction and significant period of incarceration, even though innocent."

**{¶17}** Robert B. Forney, Jr., a forensic toxicologist, submitted an opinion challenging the trial testimony of the State's toxicologist, Douglas E. Rohde. Forney opined that Rohde's opinion regarding Knapp's blood alcohol concentration was "based upon inaccuracies, omissions and a drinking history at variance with and challenged by her court testimony." Specifically, Rohde misjudged Knapp's weight, the alcohol concentration of Great Lakes Christmas Ale, the amount of alcohol Knapp had consumed, and the conversion rate of fluid ounces to milliliters.

**{¶18}** Jason Jupe and Brian Weaver, biomechanical engineers, submitted their opinion that the collision that killed Moretti was unavoidable regardless of the amount of alcohol consumed by Knapp. Jupe and Weaver concluded that, given the conditions on Fargo Drive on the night in question, "[t]he earliest Ms. Knapp would have been able to perceive the unexpected presence of the pedestrian was at a distance between 92 and 101 feet from the point of impact." Travelling at a speed "between 34 and 37 mph," if

5

Knapp had reacted at the earliest possible moment, she "would have collided with the pedestrian at a speed between 16 and 18 mph." Even at this speed, "[t]here is no scientific basis to conclude that Ms. Moretti could not have sustained fatal injuries."

{¶19} Katherine V. Schoenberger, a forensic document examiner, submitted an opinion regarding the effect of alcohol and handwriting. At trial, the State noted the contrasting legibility of Knapp's handwriting when she first arrived at BW3, and two hours after she had consumed the Christmas Ale. Schoenberger opined that "[s]ignatures are not reliable in determining the level of intoxication due to the smaller amount of writing [sample]," and that "[r]esearch has * * * shown that the intoxication level and the deterioration of handwriting do not always correlate."

{¶20} On May 25, 2012, Knapp filed a Supplement to Petition for Post-Conviction Relief. Attached thereto was a report prepared by Robert T. Glickman, a former county public defender, prosecutor, and common pleas court judge. Glickman opined, having reviewed the court records and the evidentiary materials in support of the Petition for Post-Conviction Relief, that, "to a reasonable degree of professional certainty[,] Mr. Bobulsky's representation of Ms. Knapp constituted ineffective assistance of counsel thus adversely affecting the verdict and leading directly to her conviction in violation of her Sixth Amendment right to effective assistance of counsel."

{¶21} On May 29, 2012, this court issued its decision in *State v. Knapp*, 11th Dist. No. 2011-A-0064, 2012-Ohio-2354, affirming Knapp's convictions.

{¶22} On June 18, 2012, the State filed a Motion to Dismiss Petition for Post-Conviction Relief, to which Knapp replied on July 3, 2012.

6

{¶23} On July 9, 2012, the trial court issued a Judgment Entry, ordering the Petition for Post-Conviction Relief to be dismissed. The court ruled: "Petitioner has failed to demonstrate that her defense counsel was deficient, or that she was prejudiced by counsel's alleged deficiencies. The Court finds that Petitioner has failed to satisfy her burden of presenting operative facts which sufficiently demonstrate a denial or infringement of her rights. Petitioner presents no substantive grounds for relief which would warrant a hearing on her petition."

{¶24} On August 2, 2012, Knapp filed her Notice of Appeal. On appeal, Knapp raises the following assignments of error:

{¶25} "[1.] The trial court erred by not conducting an evidentiary hearing in light of the new evidence provided by Michelle Knapp in her petition for post-conviction relief."

{¶26} "[2.] The trial court erred by not granting Michelle Knapp's petition for post-conviction relief."

{¶27} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a). "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C). "If the court does not find grounds for granting relief, it shall make and file findings of fact and

7

conclusions of law and shall enter judgment denying relief on the petition." R.C. 2953.21(G).

{¶28} It is well-established that R.C. 2953.21 "does not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Callhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶29} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *Jackson* at syllabus. Thus, "the defendant, in order to secure a hearing on his petition [based on ineffective assistance of counsel], must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982). "[W]here a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a

8

constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Callhoun* at 284.

**{¶30}** "[I]n a postconviction case involving a claim of ineffective assistance of trial counsel[,] '[a]bsent a showing of abuse of discretion, a reviewing court will not overrule the trial court's finding on a petition for post-conviction relief which is supported by competent and credible evidence.'" (Citation omitted.) *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 50. The trial court's discretion in postconviction relief proceedings encompasses the determination of "whether a defendant will even receive a hearing." *Id.* at ¶ 51; *State v. Hendrex*, 11th Dist. No. 2010-T-0103, 2011-Ohio-1588, ¶ 28 (cases cited)[2]; *State v. Holmes*, 8th Dist. No. 96479, 2011-Ohio-5848, ¶ 4.

**{¶31}** The two assignments of error collectively maintain that the trial court erred by dismissing Knapp's Petition without holding a hearing. Accordingly, the assignments will be addressed jointly.

**{¶32}** As an initial matter, Knapp argues that the trial court improperly applied the doctrine of res judicata to perfunctorily reject some of Knapp's arguments in favor of relief.

---

2. Knapp cites two Eleventh District Court of Appeals cases for the proposition that, "[i]n cases where no hearing was held, such as the case sub judice, an appellate court reviews the trial court's decision to grant or deny a petition for postconviction relief de novo." *State v. Gau*, 11th Dist. No. 2008-A-0030, 2008-Ohio-6988, ¶ 13. *Gau* fails to cite or discuss the impact of the Ohio Supreme Court's decision in *Gondor* and, therefore, is not persuasive. In the other case, *State v. Williams*, 11th Dist. No. 2007-T-0105, 2008-Ohio-3257, a de novo standard was applied because the trial court dismissed the petition in a summary judgment exercise, pursuant to R.C. 2953.21(D). This court expressly held: "*Calhoun* [applying an abuse of discretion standard] is * * * distinguishable since the Supreme Court expressly stated that such dismissal was 'pursuant to R.C. 2953.21(C),' rather than R.C. 2953.21(D) which addresses the use of summary judgment to dismiss a petition." *Id.* at ¶ 30. In the present case, the State did not support its Motion to Dismiss with extrinsic evidence or otherwise act to convert the matter into a summary judgment exercise.

{¶33} "The Supreme Court of Ohio will apply the doctrine of *res judicata* in determining whether postconviction relief should be given under Section 2953.21 *et seq.*, Revised Code." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph eight of the syllabus. "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief." *Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, at syllabus.

{¶34} In the present case, appellate and postconviction counsel for Knapp filed his formal Notice of Appearance in the trial court on September 2, 2011, ten days prior to sentencing and while Knapp was still represented by Attorney Bobulsky. Current counsel for Knapp filed and prosecuted her direct appeal, in which Bobulsky did not take part, as well as the Petition for Post-Conviction Relief. Accordingly, the issue becomes whether the competence of Bobulsky's representation could fairly have been determined without resort to evidence dehors the record.

{¶35} Many of the arguments raised in Knapp's Petition for Post-Conviction Relief could have been raised without resort to extrinsic evidence. Knapp's affidavit demonstrates her awareness of Attorney Bobulsky's alleged deficiencies with respect to the lack of counsel prior to making a statement to law enforcement, the failure to contest the admissibility of the OnStar call, the failure to present expert testimony on her behalf after having advised her that such testimony was necessary for her defense, the failure to challenge jurors, the failure to argue that Moretti was the sole proximate cause of the accident, and the inadequacy of his advice in plea negotiations. At several points in her

affidavit, Knapp attests that, had she been aware of these deficiencies prior to trial, she "would have terminated [Bobulsky's] services and hired new counsel." It is inexplicable, then, that she should have neglected to challenge the competency of his representation on direct appeal.

{¶36} We reject Knapp's contention that the expert opinions attached to her Motion for Post-Conviction Relief constituted evidence dehors the record sufficient to avoid the application of res judicata. The claims against Attorney Bobulsky's competency are based on his failure to investigate the underlying events, conduct a vigorous defense, and/or retain experts on Knapp's behalf. Evidence of these failures was in the record itself or was otherwise known to Knapp inasmuch as she claimed that Bobulsky told her it was necessary to retain experts, she was aware of the State's failure to produce the OnStar call in discovery, and Bobulsky's preformance fell short of her expectations. The substance of the expert reports is relevant to an assessment of the prejudicial impact of not presenting such testimony at trial; it is not relevant, in this case, to the issue of whether Bobulsky's deficient performance was apparent so as to have been raised on direct appeal.

{¶37} Assuming, arguendo, that res judicata did not apply to Knapp's Petition, she failed to demonstrate sufficient operative facts demonstrating that Attorney Bobulsky's performance was constitutionally deficient.

{¶38} With respect to the claim that Attorney Bobulsky failed to advise her or dissuade her from making a statement to law enforcement, we note that Knapp's statement was voluntary, regardless of whether it was made with the advice of counsel. On the written statement, Knapp acknowledged that she was advised of, and waived,

11

her right to remain silent, and that anything she said could be used against her in court. Knapp has not alleged that her statement was false or that Bobulsky had any reason to believe that her statement was less than truthful. Ohio courts have been reluctant to find a violation of the Sixth Amendment right to counsel in these circumstances. *State v. Thomas*, 6th Dist. No. L-06-1331, 2009-Ohio-1748, ¶ 48 (the failure of trial counsel to "dissuade [his client] from participating in interviews with police" did not "establish that his counsel's performance was such as to undermine the integrity of the adversarial process"); *State v. Reker*, 2nd Dist. No. CA 14124, 1994 Ohio App. LEXIS 1926, *15 (May 6, 1994) (to hold that an attorney rendered constitutionally ineffective assistance by not dissuading a client from being interviewed by the police "would be tantamount to permanently precluding all police interviews of suspects with their counsel present in the course of an investigation").

{¶39} Moreover, the most incriminating part of Knapp's written statement was that she had "about three" drinks, i.e., twenty-three ounce Christmas Ales. At trial, she qualified this statement by testifying that she only finished about one and a half beers, and that she poured the remainder into her brother's glass. Nothing Attorney Bobulsky did, or failed to do, prevented her from disclosing this fact in her initial statement to law enforcement. It is worth noting, also, that Jeffrey Knapp and Connie Braat also stated that Knapp had had three or four Christmas Ales in their initial statements to law enforcement. Accordingly, we find no deficiency in Bobulsky's performance in this regard.

{¶40} With respect to the claim that Attorney Bobulsky failed to object to the admission of the OnStar call based on the State's failure to produce the recording in

12

discovery or authenticate it, there was no prejudice. The recording is not probative of the charges for Aggravated Vehicular Homicide or Operating a Vehicle while under the Influence. As to the charge of Failure to Stop after an Accident, Knapp's conviction was supported by other substantial evidence, such as the damage to her vehicle, Nicholas Magda's testimony that Knapp continued driving without stopping after striking Moretti, and Knapp's own conduct during the two days following the accident. We note that Knapp mentioned the OnStar to law enforcement in her written statement and that, at trial, the State produced a letter from an OnStar records coordinator identifying the account associated with the recording and acknowledging that the information was produced in response to a subpoena issued on December 15, 2009. There is no reason to believe that authenticating the recording would have presented the State any difficulty.

{¶41} With respect to the claim that Attorney Bobulsky failed to seek a change of venue, there was no prejudice. The only evidence submitted that Knapp could not obtain a fair trial were comments, not entirely hostile to Knapp, posted on the internet in response to news stories. During voir dire, Bobulsky directly addressed each juror who had prior knowledge about the case and ascertained whether that would affect his or her ability to be impartial. *State v. Swiger*, 5 Ohio St.2d 151, 214 N.E.2d 417 (1966), paragraph one of the syllabus ("[t]he examination of jurors on their *voir dire* affords the best test as to whether prejudice exists in the community against the defendant").

{¶42} With respect to the claim that Attorney Bobulsky failed to challenge certain potentially hostile jurors, there was no prejudice. Juror Bonnie Smith lost her husband in an automobile accident and interned as a drug and alcohol counselor. Smith

13

believed she could be impartial, stating that "[e]ach individual is different," and that "[t]here's two sides to every story." Juror Joshua McNutt was related to the State's witness, Marcus DeCamillo, and admitted that could affect his ability to be fair and impartial. When questioned by Bobulsky, McNutt stated he was "not sure" how he would react to DeCamillo's testimony "until the time comes." McNutt also affirmed he would have no difficulty returning a "not guilty" verdict if the State failed to prove its case. As a practical matter, DeCamillo's testimony had little, if any probative, value. At trial, he testified that he had no difficulty seeing Nicholas Magda waving for help, because the "area was lit up."

{¶43} Knapp claimed that Juror Sharon Mirando stated that she believed that it was illegal to consume any amount of alcohol and drive. The voir dire transcript does not support this contention:

{¶44} Mr. Bobulsky: Do you believe that it is illegal to drink and drive, simply to have a drink and drive?

{¶45} Sharon Mirando: One drink?

{¶46} Mr. Bobulsky: Well, my question is, if you have something to drink and you are not impaired, do you believe that in itself is illegal?

{¶47} Sharon Mirando: And you are not impaired?

{¶48} Mr. Bobulsky: That's correct. That's -- that's my question to you. Would you accept that fact?

{¶49} Sharon Mirando: Yes.

14

{¶50} Mr. Bobulsky: All right. And my question then further is, at this point in time, you have heard no evidence, correct?

{¶51} Sharon Mirando: Correct.

{¶52} Although somewhat confusing, Juror Mirando appears to be affirming the fact that one could have a drink and not be impaired. Elsewhere, Mirando affirmed that her judgment would be based on the evidence presented at trial. After Juror Smith previously stated that she did not believe having one drink rendered a person impaired, Attorney Bobulsky asked the jurors collectively "the same thing," whether "they would hold [having a drink] against a person if * * * there is no evidence of impairment?" There was no affirmative response from the jury.

{¶53} With respect to the claim that Attorney Bobulsky failed to investigate the State's witness, Catherine Rotko's, background and credibility, there was no prejudice. Rotko's trial testimony was important, because she affirmatively testified that Knapp was intoxicated before leaving BW3. However, Knapp has not presented any admissible evidence that could have been used to impeach her. The private investigator's affidavit stated that "Rotko was reported to have been charged on August 8, 2008, with Felony Possession of Drugs, Misdemeanor Possession of Drug Abuse Instruments and Misdemeanor Domestic Violence." The source of this information is not identified and no case number or other corroborating information was provided. The investigator further stated that a former BW3 employee, Michael Maurer, advised that Rotko was "fired for stealing," but could not recall any particulars and believed that the whole matter had been "swept under the rug" by management.

15

{¶54} With respect to the claim that Attorney Bobulsky failed to inquire about Knapp's night vision and hearing disabilities, there was no deficiency. Knapp submitted no corroborating evidence of these disabilities beyond her own affidavit. If Knapp does suffer from significantly limited night vision and hearing, it would have been more reasonable and credible for her to have brought these disabilities to Bobulsky's attention, rather than expect him to discover them on his own.

{¶55} With respect to the claim that Attorney Bobulsky failed to argue that Moretti was the sole proximate cause of her own death, there was no deficiency. In the present case, the trial court duly instructed the jury that Knapp could be held criminally liable for Moretti's death, "unless you find that the decedent's conduct, that's Melanie Moretti, was the sole and proximate cause of her death." In his closing argument before the jury, Bobulsky emphasized that the State's own witnesses acknowledged that Moretti was wearing dark clothing, walking in the street when sidewalks were available, and walking on the wrong side of the street, i.e., with traffic. In light of these circumstances, Bobulsky assured the jury "that there was not a proximate cause between any driver who was impaired or under the influence."

{¶56} With respect to the claim that Attorney Bobulsky failed to properly counsel Knapp in plea negotiations, the United States Supreme Court has recently affirmed that criminal defendants are entitled to the effective assistance of counsel during plea negoations. *Lafler v. Cooper*, __ U.S. __, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012); *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 1407-1408, 182 L.Ed.2d 379 (2012). Claims of ineffective assistance may be based on trial counsel's advice to reject a plea offer on the grounds that the defendant could not be convicted at trial. *Lafler* at

16

1384. To satisfy the prejudice requirement in such circumstances, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervenining circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385; *Frye* at 1409.

{¶57} In the her affidavit, Knapp made the following claims regarding Attorney Bobulsky's performance during plea negotiations:

{¶58} 41. From the commencement of his representation of me on December 14, 2009 through the conclusion of trial, Mr. Bobulsky instructed me that I would take no plea offer which involved incarceration.

{¶59} 42. I understand now that the State was prepared to reduce the charges if I were willing to accept some period of incarceration.

{¶60} 43. Had Mr. Bobulsky advised me of my realistic exposure to a conviction and significant period of incarceration, even though innocent, I would have agreed to plead guilty and do some period of incarceration so as to minimize the effect of these proceedings on my daughter and family.

**{¶61}** 44.  Instead, Mr. Bobulsky led me to believe that the State's case was weak and that I had nothing to be concerned with which would warrant consideration of a guilty plea or incarceration.

**{¶62}** In considering this argument, the trial court found that Knapp's "affidavit provide[d] no credible information which would overcome the strong presumption that Petitioner's experienced attorney advised her of the possible consequences of rejecting any plea offers by the prosecution."

**{¶63}** There was no abuse of discretion in the trial court's rejection of Knapp's claims.  Knapp bore the burden of demonstrating sufficient operative facts of trial counsel's lack of competence and resulting prejudice.  In the affidavit, there are no specific details about the plea negotations or Attorney Bobulsky's performance, apart from the statements that "the State was prepared to reduce the charges" and that "Bobulsky led me to believe the State's case was weak."  Bobulsky's professional estimation that the State's case was "weak," without more, does not rise the level of ineffective assistance.  There are no unequivocal statements as to what offers, if any, the State was willing to entertain or that Bobulsky failed to communicate such offers or that he rejected such offers without her consent.  Without the details of an actual plea offer, it is impossible to evaluate the probability of such an offer being accepted by the court and how the outcome of such a plea might have differed from the outcome at trial.

**{¶64}** Also, the trial court was within its discretion to doubt the credibility of Knapp's claims.  *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.Ed.2d 905 (1999), at paragraph one of the syllabus ("[i]n reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to

18

under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact"). That Attorney Bobulsky failed to advise her, or that she failed to appreciate, the "realistic exposure to a conviction and signficant * * * incarceration" is questionable in light of the seriousness of the charges and the undisputed fact that Knapp struck and killed Moretti with her vehicle after drinking for several hours. *State v. Fry*, 9th Dist. No. 26121, 2012-Ohio-2602, ¶ 19 (rejecting claim, based on "self-serving affidavit," that the petitioner would have accepted a plea offer if trial counsel had consulted outside counsel or his family members).

**{¶65}** The report of Forensic Toxicologist Forney failed to demonstrate sufficient operative facts that Attorney Bobulsky was ineffective. The Ohio Supreme Court has often affirmed that the failure to call an expert witness and the decision to instead rely on cross-examination does not necessarily constitute ineffective assistance of counsel. *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). Knapp must also demonstrate a reasonable likelihood that the outcome of trial would have been different had Forney's report been introduced. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 118.

**{¶66}** It is not reasonably likely that Forney's report would have changed the outcome of trial. The State's expert, Douglas Rohde, testified that three twenty-three ounce Christmas Ales contained 120.8 grams of alcohol. Forney opined that Knapp had only consumed 51.5 grams of alcohol on the date in question. Instead of relying on the testimony that Knapp had consumed three Christmas Ales, Forney relied on Knapp's trial testimony that she had only consumed one and a half Christmas Ales.

19

Forney also noted that, according to the distributor, the alcohol content of the Christmas Ale was between 6.38% and 7.63% by volume. Rohde has relied upon the manufacturer's stated content of 7.5%, but frankly acknowledged that the actual content varied from the printed label. Rohde testified that 7.5% was the highest possible alcohol content, while Forney's report, in contrast, recognized the possibility of the alcohol content exceeding 7.5%. Forney also claimed that Rohde applied the incorrect conversion rate of 29.9 milliliters per fluid ounce, rather than 29.57 milliliters per fluid ounce.

{¶67} Forney also opined that the "head" of foam on a glass of Christmas Ale could reduce the volume of beer by as much as two ounces per glass.

{¶68} In determining Knapp's blood alcohol concentration, Forney opined that it would have been 0.06 g/100 ml, based on the consumption of two Christmas Ales and a body weight of 160 pounds. Rhode's calculation of Knapp's blood alcohol concentration under these circumstances was 0.075 g/100 ml. Significantly, both sets of calculations put Knapp above the level at which impairment is possible (0.05 BAC), and, if extrapolated for the consumption of three Christmas Ales, would put her above the legal limit in Ohio (0.08 BAC).

{¶69} In sum, Forney's report does not significantly impeach Rohde's testimony. The amount of alcohol actually consumed by Knapp was a matter of judging witnesses' credibility, and not properly the subject of expert testimony. Rohde acknowledged that actual alcohol content of a Christmas Ale differed from the labeling but, according to Forney's report, this could have the effect of increasing the amount of alcohol actually consumed, as well as decreasing it. Finally, it was not demonstrated that different

factors for converting milliliters into fluid ounces significantly affected the determinations of Knapp's blood alcohol concentration.

{¶70} The report of Biomechanical Engineers Jupe and Weaver similarly failed to demonstrate that such testimony would have altered the trial's outcome, despite the claim that the report "demonstrates, as a matter of scientific and mathematical certainty, that on the night of the accident, even a non-impaired driver would have been unable to avoid colliding with Ms. Moretti."

{¶71} Jupe and Weaver's report contains several shortcomings compromising its credibility. The first is the conclusion that Knapp could not possibly have seen Moretti until she was at a distance between 92 and 101 feet. Several witnesses testified that there were no adverse lighting conditions on the night in question that would have so drastically limited visibility. Timothy Talso had no difficulty seeing Moretti's shoe, left under a street light at the point of impact, from a distance of approximately 100 feet. Nicholas Magda testified that several cars were able to pass him and Moretti on Fargo Drive while successfully avoiding the scientifically and mathematically certain collision posited by Jupe and Weaver. Finally, Jupe and Weaver did not account for the possibility of Knapp swerving to avoid collision.

{¶72} In addition to these credibility issues, Jupe and Weaver's report contained opinions potentially prejudicial to Knapp's defense. Jupe and Weaver opined that Knapp was travelling "between 34 and 37 mph at the moment of impact." The speed limit on Fargo Drive is 25 mph, and Knapp testified she was driving the speed limit. At trial, when one of the State's witnesses stated that Knapp may have been travelling in excess of 35 mph, Attorney Bobulsky moved for a mistrial. On direct appeal, Knapp's

21

present counsel argued that the prejudice caused by this testimony could not be undone by curative instruction, since "[i]t is axiomatic that speeding is an indicia of impairment." *Knapp*, 2012-Ohio-2354, at ¶ 80.

**{¶73}** Jupe and Weaver's report further opined the Moretti's occipital skull fractures were caused by Moretti's head impacting the hood of Knapp's Saturn. The testimony that Moretti's head and torso impacted the top of the Saturn's hood, in relatively close proximity to the windshield, could be used to impeach Knapp's claims to have not seen the object she struck and carried for a distance of about 70 feet.

**{¶74}** Lastly, the report of Forensic Document Examiner Schoenberger failed to demonstrate sufficient operative facts warranting a hearing on the Petition or relief from conviction. The substance of this report, that a signature is not a reliable indicator of intoxication, is not beyond an unaided jury's comprehension. The evidence of Knapp's signature was circumstantial evidence consistent with, but not equal in weight to, Rotko's testimony and Knapp's own admissions, along with those of her brother and Connie Braat, to law enforcement. It is also worth noting that Knapp signed her written statement eleven times and that her signature was consistent with her signature upon arrival at BW3, before consuming the Christmas Ales.

**{¶75}** The facts of the present case are distinguishable from those in *State v. Henderson*, 11th Dist. No. 2001-T-0047, 2002-Ohio-6715, and *State v. Brant*, 11th Dist. No. 97-P-0037, 2000 Ohio App. LEXIS 3540 (Aug. 4, 2000), which Knapp relies on for the proposition that the failure to call an available expert witness constitutes ineffective assistance of counsel. In *Henderson*, a child-rape case, trial counsel failed to call a doctor who would have testified that "the medical findings reveal[ed] no indications of

22

sexual abuse." 2002-Ohio-6715, at ¶ 24. This evidence was deemed crucial since it was inconsistent with the victim's testimony and potentially raised other doubts about the defendant's guilt. *Id.* at ¶ 24-29. In *Brant*, also a rape case, the issue was whether the intercourse was forced or consensual. The State presented the testimony of a nurse that there was physical evidence of forced intercourse. 2000 Ohio App. LEXIS 3540, at *8. Prior to trial, a doctor had examined the same physical evidence and concluded that it was consistent with consensual intercourse. *Id.* at *13. Although the doctor was available and willing to testify, defense counsel did not call her as a witness. This court concluded that the failure to call the doctor as a witness was prejudicial, since the physical evidence was the only "objective" evidence by which the jury could judge the credibility of the defendant's and the victim's contradictory version of events. *Id.* at *24.

{¶76} The expert opinions attached to Knapp's Petition did not have the same probative value as the testimony at issue in *Henderson* and *Brant*. In those cases, the expert testimony would have been directly probative of the defendant's guilt or innocence. In the present case, Forney's toxicology report merely qualified the testimony of the State's expert. As noted above, if the jury chose to believe that Knapp had consumed three to four Christmas Ales, she would have been legally intoxicated under either expert's calculations. Jupe and Weaver's report was exculpatory in that it concluded the collision was inevitable regardless of impairment. However, there are credibility issues with the report and, in other respects, the report was inculpatory in that Knapp's excessive speed and Moretti's impact with the hood of the Saturn indicated

23

impairment. Finally, Schoenberger's handwriting report was not exculpatory, but merely went to the weight of the circumstantial handwriting evidence.

{¶77} Knapp's two assignments of error are without merit.

{¶78} For the foregoing reasons, the Judgment of the Ashtabula County Court of Common Pleas, denying without hearing Knapp's Petition for Post-Conviction Relief, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J., concurs with a Concurring Opinion,

CYNTHIA WESTCOTT RICE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

_____


TIMOTHY P. CANNON, P.J., concurring.

{¶79} I respectfully concur in the majority opinion. I write separately to address the issue raised by the dissent. I agree with the dissent that the concern about communication with counsel and the defendant concerning pre-trial plea bargaining would typically warrant a hearing. I agree with the dissent's analysis; however, I do not believe appellant has properly presented the issue on appeal. In the postconviction petition filed in the trial court, appellant made a general statement that counsel did not properly advise her with regard to plea negotiations. However, on appeal, there is no error assigned with regard to the plea negotiation issue, no issue raised under any

separate assignment of error, and in fact, no mention of the plea negotiation issue anywhere in appellant's brief.

{¶80} App.R. 16(A) states:

{¶81} The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

{¶82} * * *

{¶83} (3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.

{¶84} (4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates.

{¶85} * * *

{¶86} (6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.

{¶87} (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary. * * *

{¶88} There may be many reasons why appellant has failed to address the issue on appeal. However, the reason for requiring that the issue be addressed in the appellate brief, according to App.R. 16(A), is clear: appellee must be given notice of the

25

theory of law upon which appellant relies and an opportunity to refute or respond to that theory. Therefore, I find no error on the part of the trial court for not granting a hearing on the issue of whether appellant was properly advised concerning pretrial plea negotiations.

_____

CYNTHIA WESTCOTT RICE, J., concurring and dissenting.

{¶89} Because I conclude appellant has demonstrated a substantive ground for relief regarding her counsel's alleged failure to properly advise her during plea negotiations, I would hold she is entitled to a hearing on this point. As a result, I respectfully dissent from the majority opinion on this issue alone. I concur in all other respects.

{¶90} It is well settled that an evidentiary hearing is not automatically required for every petition seeking postconviction relief. If, however, a petitioner has shown a substantive ground for relief, based upon the petition, the supporting affidavits, and the files and records in the case, a hearing is warranted. *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980); *see* R.C. 2953.21.

{¶91} According to appellant's affidavit, trial counsel failed to advise her that she would be exposed to a significant period of incarceration if she were convicted after a trial. And, appellant averred, trial counsel instructed her to take no plea offer involving incarceration because, she was led to believe, the state's case was weak. After her trial, however, appellant allegedly discovered that the prosecution was prepared to reduce the charges if she was willing to accept some period of incarceration. Given

26

counsel's advice, appellant maintains she did not have the opportunity to accept a plea to a lesser charge, but would have had she been fully apprised of what was at stake.

**{¶92}** The averments of appellant's affidavit suggest trial counsel may not have communicated the state's alleged plea offer(s) to appellant prior to trial. In *Missouri v. Frye*, 132 S.Ct. 1399 (2012), the Supreme Court of the United States held that an attorney's failure to inform a defendant of a written plea offer before it expires is sufficient to show deficient performance under *Strickland v. Washington*, 466 U.S. 668. *Frye*, *supra*, at 1409. And, the court held, prejudice is demonstrated if a defendant is able to show a reasonable probability *both* that she would have accepted the more favorable plea offer had it been communicated and that the plea would have been entered without the prosecution canceling it or the court refusing it. *Id.*

**{¶93}** Appellant's theory for postconviction relief is based upon her attorney's representations prior to trial and alleged information that he may have withheld from her in the course of plea negotiations. The majority concludes that the lack of "operative facts" supporting her claim of ineffectiveness is sufficient to affirm the trial court's decision to dismiss the issue without a hearing. In my view, and in light of *Frye*, this is not a basis for dismissal, but *the* justification for holding a hearing on the issue.

**{¶94}** Where a petitioner has raised a substantive ground for relief, which cannot be resolved as a matter of law, a court is statutorily obligated to hold a hearing to determine whether the claim justifies relief. Appellant's theory of ineffectiveness presents a substantive ground for relief pursuant to *Frye*. And it is necessarily premised upon evidence outside the record that cannot be fairly adjudicated without a hearing. I

27

would therefore hold appellant is entitled to a hearing on whether counsel could be held ineffective for allegedly failing to communicate a potential plea offer or offers.

{¶95} For the above reasons, I dissent, in part, to the majority opinion.